[No. D057737. Fourth Dist., Div. One. Nov. 8, 2011.]

YAUBE ROBERTS, Plaintiff and Respondent, v.
EL CAJON MOTORS, INC., Defendant and Appellant.

834

**COUNSEL**

Tharpe & Howell, Christopher S. Maile and Soojin Kang for Defendant and Appellant.

Rosner, Barry & Babbitt, Hallen D. Rosner, Christopher P. Barry and Angela J. Smith for Plaintiff and Respondent.

**OPINION**

**BENKE, Acting P. J.**—El Cajon Motors, Inc., doing business as El Cajon Ford (El Cajon), appeals from an order denying its petition to compel arbitration of an action brought by Yaube Roberts individually and on behalf of others similarly situated for violation of, inter alia, the Automobile Sales Finance Act (Civ. Code, § 2981 et seq.; ASFA), the Consumers Legal Remedies Act (*id.,* § 1750 et seq.) and the unfair competition law (Bus. & Prof. Code, § 17200 et seq.; UCL). Because we conclude substantial evidence in the record supports the finding of the trial court that El Cajon forfeited arbitration, we affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

In late June 2009, Roberts sued El Cajon and Crescent Bank & Trust (Crescent). Roberts's first and second causes of action against El Cajon are based on violations of the ASFA and the UCL, respectively, and are brought on her own behalf and on behalf of classes of similarly situated persons.[1]

Roberts alleges she was one of many customers who, during the four years prior to the date she filed the complaint, purchased a vehicle from El Cajon using a retail installment sale contract (RISC). According to Roberts, she entered into more than one RISC for the same vehicle and the final RISC she signed was backdated by El Cajon to the date of the first RISC she executed. As a result of this alleged unlawful practice, Roberts contends El Cajon "failed to properly disclose the Annual Percentage Rate ('APR') and finance charges on the RISCs" and El Cajon charged consumers illegal interest "from the date of the initial RISC, rather than [from] the final RISC, resulting in undisclosed finance charges."

### A. Class Action Allegations

Roberts's complaint includes the following two proposed classes of plaintiffs in connection with her first and second causes of action against El Cajon:

" 'Class 1': All persons who, in the four years prior to the filing of this complaint, (1) purchased a vehicle from [El Cajon] for personal use, (2) on a later date rescinded their original [RISC], and (3) signed a subsequent or second RISC for the purchase of the same vehicle, which RISC was dated the date of the original RISC and [which] involved financing at an [APR] greater than 0.00%.

" 'Class 2': All persons who, in the four years prior to the filing of this complaint, (1) purchased a vehicle from [El Cajon] for personal use pursuant to a[n] RISC, (2) agreed to pay some or all of the down payment at a date after execution of the contract, and (3) whose RISC does not disclose that some portion of the down payment would be deferred until not later than the due date of the second regularly scheduled installment under the RISC and that was not subject to a finance charge."

### B. El Cajon Answers the Complaint and Discovery Commences

El Cajon answered the complaint in mid-August 2009. In addition to its general denial of all allegations pursuant to Code of Civil Procedure section

---

[1] Roberts's third, fourth and fifth causes of action for violation of the ASFA, the UCL and for declaratory relief, respectively, were brought by her individually against Crescent. Roberts dismissed Crescent without prejudice from the lawsuit in late October 2009. Crescent therefore is not a party to this appeal.

431.30, El Cajon asserted 24 affirmative defenses. None of its affirmative defenses, however, alleged the existence of an arbitration provision that is the subject of this appeal.

Roberts served substantial written discovery on El Cajon in mid-October 2009. As we discuss *post*, this discovery focused primarily on Roberts's class action allegations including identification of putative class members, among other subject matters. El Cajon also served Roberts with written discovery, which El Cajon describes as "routine background discovery" including form and special interrogatories and document requests.

El Cajon responded to Roberts's written discovery in late January 2010, one day after it filed its motion to compel arbitration. Roberts responded to El Cajon's discovery and opposed El Cajon's motion to compel. In her opposition, Roberts claimed the arbitration provision in the new RISC was procedurally and substantively unconscionable.

### C. *El Cajon Contacts Putative Class Members and Offers to Settle the Proposed Class Action*

In mid-February 2010, Roberts learned for the first time that El Cajon had made monetary settlement offers to putative class members. Roberts's counsel was contacted by Blanca Barajas, a putative class member, who received two letters from El Cajon on El Cajon letterhead.

In one letter, El Cajon enclosed a $50 check dated January 27, 2010, made payable to Blanca and Mario Barajas offering to settle any claim they might have against El Cajon arising out of this lawsuit. Specifically, this letter noted that El Cajon denied any wrongdoing in the "proposed class action lawsuit" and was "defending the lawsuit." However, the letter went on to say that as a result of "human error," El Cajon had "made a mistake when it did not notice the date of your second [RISC] was not changed to reflect the date you were signing it."

El Cajon stated in the letter it was offering the $50 check "to avoid expense and inconvenience to us both" and advised the Barajases that if they wished to settle and compromise any potential claims they might have against El Cajon that concern the dating of their RISC, "you can simply cash the check. By signing the back of the check, you will be releasing [El Cajon] from the potential claims involving the dating of your contract only. If you have any other claims against [El Cajon], those claims will not be affected. Therefore, if you do not wish to settle any potential claims you might have concerning the dating of your contract, or you are at all interested in participating in the class action lawsuit, do not cash the check—destroy and discard it." (Boldface omitted.)

This letter also referenced an enclosed check for $2.16, which was the subject of the second letter sent by El Cajon to the Barajases. The first letter concluded with an apology for any inconvenience caused by El Cajon, provided a number to call if the Barajases had any questions and offered to provide a copy of the complaint in this action free of charge on request. The letter was signed by John Blake, the controller for El Cajon.

In the second letter, also signed by Blake, El Cajon admitted that due to an "oversight" the annual percentage rate (APR) should have been calculated based on the date the Barajases signed the second RISC, as opposed to the date they signed the original RISC. As such, El Cajon enclosed a check made payable to the Barajases for $2.16, stating this was the amount "some view . . . as the amount of finance charges which accrued during the dates of your first and second [RISC] contracts." El Cajon advised the Barajases that this check was "yours to cash with no strings or conditions."

> D. *Roberts Conducts Discovery Regarding El Cajon's Communications with Putative Class Members and Files a Supplemental Brief Contending El Cajon Waived/Forfeited Arbitration*

Based on the information provided by Blanca Barajas, Roberts's counsel appeared ex parte seeking an order from the trial court (1) to conduct discovery, including: deposing Blake regarding the arbitration clause in the RISC;[2] any communications between El Cajon and putative class members; and dealership practices and policies in connection with the disclosure to consumers of the arbitration clause in the RISC, among other subject matters; (2) to file a supplemental brief to oppose El Cajon's motion to compel; and (3) to continue the hearing on the motion to compel arbitration. Roberts contended that El Cajon's offer to settle with putative class members was a "blatant attempt to mislead consumers about their rights and remedies in an effort to 'pick off' class members prior to the filing of the motion for class certification." El Cajon opposed the ex parte application.

The court granted Roberts relief and continued the hearing on El Cajon's motion to compel arbitration. Roberts deposed Blake, El Cajon's controller.[3] Blake testified that the process of identifying the putative class members was a direct result of the instant lawsuit. Specifically, he testified: "Upon a review of the lawsuit that was filed, we understood that to be any customer whose contract was rewritten because we had to either change the terms or some

---

[2] The arbitration provisions in the "original" and "new" RISC's executed by Roberts are identical, as the provision is included in the standard RISC form used by El Cajon.

[3] This court in March 2011 granted El Cajon's unopposed request to augment the record on appeal to include portions of Blake's deposition testimony.

other fashion of the contract, so we identified people who had an authorization for rewritten contract form in their file. We isolated those types of transactions. We then prepared a spreadsheet which listed their names, address, deal number, terms of the contract with respect to APR rate, amount financed, who it was financed with, term of the contract, and then listed the original date of the contract [(e.g., RISC)], the date of the rewritten contract, and the date the rewritten contract was signed."

Blake testified that from this group of about 2,000 transactions, they identified about 92 RISC's where the date was incorrect on the second or subsequent RISC. After isolating "out the deals where the date of the contract—the original date of the contract and the date of the rewritten contract were inconsistent with being updated," Blake testified that information "was turned over to our attorney. And I believe the attorney had the purported calculations of the difference in the interest calculated."

Blake further testified the attorney prepared the letters, such as the ones received by the Barajases, and El Cajon "issued a check to the customer with a letter explaining what the check was for; and then we issued a [second] check for $50 with an explanation of what that check was for." According to Blake, all 92 putative class members received the same letters, although the APR refund amount varied among the members.

Blake testified the process of identifying putative class members began after El Cajon was sued in this case in order for El Cajon "to mitigate any damages that might happen because of this lawsuit." Prior to the lawsuit, Blake testified El Cajon had not taken any steps to identify customers who signed multiple RISC's that were incorrectly dated. Blake also testified that on the advice of counsel, El Cajon sought to return any interest payments to customers falling within the proposed class to "reduce and mitigate our possible damages from this lawsuit" and agreed to pay $50 to settle these claims because "[w]ith the costs of attorneys, it's a lot less expensive to settle these claims than it is to fight them all in court."

Blake testified the letter sent by El Cajon to putative class members did not mention arbitration, did not invite those members to arbitrate if they rejected the settlement offer, did not identify class counsel in this lawsuit and did not identify the remedy sought by Roberts in this lawsuit on her behalf and others similarly situated.

Blake also testified that to the best of his recollection, about 35 of the putative class members cashed the refund checks for the incorrect APR, and about 30 members cashed the $50 refund check in settlement of their claims against El Cajon arising from this lawsuit.

E. *Order Denying Arbitration*

The trial court denied El Cajon's motion to compel arbitration, ruling as follows:

"The Court finds [El Cajon] waived its right to arbitration. 'The issue of waiver is not resolved by reference to a single test. Rather, a finding on that issue is based on various factors, including (1) whether that party seeking arbitration previously had taken steps inconsistent with an intent to arbitrate; (2) whether that party had unreasonably delayed in seeking arbitration; and (3) whether that party had acted in "bad faith" or with "willful misconduct." In addition, a finding of prejudice is necessary.' (*Kaneko Ford Design v. Citipark, Inc.* (1988) 202 Cal.App.3d 1220, 1228 [249 Cal.Rptr. 544].) In this case, these factors merit a finding [El Cajon] waived its right to compel arbitration. [El Cajon] waited five months after answering [the complaint] before filing the motion to compel arbitration. (Answer: August 21, 2009; Motion to Compel Arbitration: January 29, 2010.) In the interim, [El Cajon] was informing [Roberts] it could not respond to [her] discovery requests for various reasons at the same time [El Cajon] was reviewing its records to determine which putative class members should receive a settlement letter. ([Roberts's] Supp. Exhibits, 1, 2, 6 and 7.) [El Cajon] never indicated it intended to seek arbitration. Meanwhile, [El Cajon] was gleaning information about the putative class to try to commandeer [Roberts's] litigation strategy.

"In addition to the above factors, the party opposing the motion to compel arbitration must have also suffered prejudice. 'Prejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration.' (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1204 [8 Cal.Rptr.3d 517, 82 P.3d 727].) In this case, [El Cajon's] delay in moving to compel arbitration resulted in obtaining information about the class. [El Cajon] began identifying putative class members in early September 2009 and began to try to mitigate any damages. (Blake Depo. 20:2-11.) [El Cajon] sent settlement letters to putative class members but failed to advise the putative class members of [Roberts's] counsel['s] contact information or the potential remedies being sought on their behalf. ([Roberts's] Supp. Exhibits 6 and 7[.]) [El Cajon's] attempts to settle the case and usurping [Roberts's] case while, at the same time, giving no indication of any such intent is not condoned by the court. Thus, the motion to compel arbitration should be denied.[4]

---

[4] El Cajon subsequently moved for reconsideration of the trial court's denial of its motion to compel arbitration. On appeal, El Cajon has *not* challenged the trial court's denial of its reconsideration motion.

"Assuming, *arguendo*, there was no waiver, the motion to compel should be denied on the grounds the arbitration agreement is unconscionable. The arbitration clause is substantively unconscionable because the clause provides more remedies for [El Cajon] than for [Roberts], it is inherently vague, because it could potentially impose the cost of the arbitration on [Roberts], the party least able to afford the process, and because the appeal provision is one-sided. The arbitration clause is procedurally unconscionable because it is a contract of adhesion, the arbitration is on the reverse side of a pre-print[ed] contract in small print, [Roberts] was never advised there was a[n] arbitration clause, [Roberts] could not negotiate any terms of the contract and because no employees at the dealership are trained to respond to any questions regarding the arbitration clause or provide the rules for arbitration.

"[El Cajon's] evidentiary objections are overruled."

## DISCUSSION

### A. *Governing Law*

■ Public policy considerations strongly favor arbitration as a means of settling disputes. (*St. Agnes Medical Center v. PacificCare of California, supra*, 31 Cal.4th at p. 1195.) However, a trial court may deny a petition to compel arbitration if it finds the moving party has "waived" that right. (*Ibid.*; *Berman v. Health Net* (2000) 80 Cal.App.4th 1359, 1363 [96 Cal.Rptr.2d 295].) "[T]he term 'waiver' has a number of meanings in statute and case law. [Citation.] While 'waiver' generally denotes the voluntary relinquishment of a known right, it can also refer to the loss of a right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to relinquish the right. [Citations.] In the arbitration context, '[t]he term "waiver" has also been used as a shorthand statement for the conclusion that a contractual right to arbitration has been lost.' [Citation.]" (*St. Agnes Medical Center v. PacifiCare of California, supra*, 31 Cal.4th at p. 1195, fn. 4; accord, *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 315 [24 Cal.Rptr.2d 597, 862 P.2d 158] ["Generally, 'waiver' denotes the voluntary relinquishment of a known right," "[b]ut it can also mean the loss of an opportunity or a right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to abandon or relinquish the right."].)

■ "Although a court may deny a petition to compel arbitration on the ground of waiver ([Code Civ. Proc.,] § 1281.2, subd. (a)), waivers are not to

be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof. [Citations.] [¶] Both state and federal law emphasize that no single test delineates the nature of the conduct that will constitute a waiver of arbitration. [Citations.] ' "In the past, California courts have found a waiver of the right to demand arbitration in a variety of contexts, ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration [citations] to instances in which the petitioning party has unreasonably delayed in undertaking the procedure. [Citations.] The decisions likewise hold that the 'bad faith' or 'willful misconduct' of a party may constitute a waiver and thus justify a refusal to compel arbitration. [Citations.]" ' " (*St. Agnes Medical Center v. PacifiCare of California, supra*, 31 Cal.4th at pp. 1195–1196.)

█ As set forth by our high court in *St. Agnes Medical Center v. PacifiCare of California, supra*, 31 Cal.4th at page 1196, when a court considers the issue of waiver or forfeiture in this context, the following factors generally apply: " ' "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' [Citation.]"

B. *Standard of Review*

As both parties in this appeal recognize, the question of waiver generally is one of fact. (*St. Agnes Medical Center v. PacifiCare of California, supra*, 31 Cal.4th at p. 1196.) As such, the trier of fact's finding of waiver, if supported by substantial evidence, is binding on this court. (*Ibid.*) " 'The appellate court may not reverse the trial court's finding of waiver unless the record as a matter of law compels finding nonwaiver.' [Citation.]" (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 946 [118 Cal.Rptr.3d 613].) "We construe any reasonable inference in the manner most favorable to the judgment, resolving all ambiguities to support an affirmance." (*Ibid.*)

Before turning to the record to determine whether it contains substantial evidence to support the trial court's finding that El Cajon waived arbitration, we first consider the language of the arbitration provision.

C. *The Arbitration Provision in the RISC[5]*

The arbitration provision is located on the back of a preprinted form RISC used by El Cajon. It provides as follows:

"1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.[6]

"2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CON-SOLIDATION OF INDIVIDUAL ARBITRATIONS.

"3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

"Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relate to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our selection, be resolved by neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations and its appli-cable rules: the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com), the American Arbitration Association, 335 Madison Ave, Floor 10, New York, NY 10017-4605 (www.adr.org), or

---

[5] See footnote 2, *ante.*

[6] The RISC defines "you" to mean the buyer or cobuyer and "we" or "us" to mean the creditor-seller.

any other organization that you may choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

"Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside, unless the Creditor-Seller is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee up to a maximum of $1500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this clause, then the provisions of this clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

"You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitration by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This clause shall survive any termination, payoff or transfer of this contract. If any party of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this arbitration clause shall be unenforceable."[7]

---

[7] In light of our conclusion *post* that El Cajon, by its conduct, waived arbitration, we need not decide whether the arbitration provision in the RISC was procedurally and substantively

### D. *Analysis*

El Cajon first argues it "engaged in no conduct inconsistent" with its right to arbitrate this dispute. It also argues the five-month delay[8] between the time it filed its answer and moved to compel arbitration was "modest" and this delay, standing alone, was insufficient under *Keating v. Superior Court* (1982) 31 Cal.3d 584 [183 Cal.Rptr. 360, 645 P.2d 1192], overruled on other grounds as stated in *Southland Corp. v. Keating* (1984) 465 U.S. 1, 17 [79 L.Ed.2d 1, 104 S.Ct. 852] and other case law (most of which is from jurisdictions outside California) to establish waiver "without some resultant prejudice" to Roberts. According to El Cajon, there is no evidence in the record to show Roberts was prejudiced by its decision to wait five months after answering the complaint to seek arbitration.

Here, we need not decide whether a five-month delay—without more[9]—is insufficient as a matter of law to constitute waiver of arbitration because we conclude there is ample evidence in the record to support the findings of the trial court that El Cajon's conduct was inconsistent with its intent to arbitrate

---

unconscionable, as the trial court alternatively found in its order denying El Cajon's motion to compel. (See, e.g., *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1532 [60 Cal.Rptr.2d 138].)

[8] The parties disagree regarding the methodology we should employ to calculate the length of the delay in this case. Roberts claims delay should be measured from the date she filed her action, and thus claims El Cajon waited *seven* months before moving to compel arbitration. El Cajon contends such a rule makes sense only when the plaintiff seeks to invoke arbitration, and that a different rule applies when, as is the case here, the defendant moves to compel arbitration. El Cajon further contends that perhaps the date a defendant is served with the complaint should start the clock running for purposes of determining delay in this context. Because our decision in this case does not turn solely on the length of El Cajon's delay in moving to compel arbitration, we decline to resolve this dispute.

[9] As the parties recognize, the issue of whether delay alone is sufficient to establish "prejudice" and a resulting waiver of arbitration has been the subject of some debate in our state. In *Burton v. Cruise, supra*, 190 Cal.App.4th at page 947, the Court of Appeal noted that an "egregious delay may result in prejudice" and concluded that to the extent there is a conflict between *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 996 [72 Cal.Rptr.2d 43], which found the bank waived arbitration when it allowed its customers to spend 10 months preparing their case for trial at considerable expense and time, and *Groom v. Health Net* (2000) 82 Cal.App.4th 1189 [98 Cal.Rptr.2d 836], which reversed an order denying arbitration after the petitioning party waited 11 months after the filing of the complaint to compel arbitration and demurred four times to the original and amended complaints, "we believe that it is *Groom* [*v. Health Net*], not *Sobremonte* [*v. Superior Court*], which should be left standing at the altar." (*Burton*, at p. 948.) The court in *Burton v. Cruise* concluded that *Groom v. Health Net* "erred in failing to recognize that a petitioning party's conduct in stretching out the litigation process itself may cause prejudice by depriving the other party of the advantages of arbitration as an 'expedient, efficient and cost-effective method to resolve disputes,'" and that "[a]rbitration loses much, if not all, of its value if undue time and money is lost in the litigation process preceding a last-minute petition to compel." (*Ibid.*)

*and* such conduct prejudiced Roberts. (See *St. Agnes Medical Center v. PacifiCare of California, supra,* 31 Cal.4th at pp. 1194, 1196.)

We note from the record that Roberts conducted substantial written discovery in this case regarding the class action allegations against El Cajon including, among other subject matters: (1) the identification of putative class members (in both class 1 and class 2); (2) the procedures El Cajon had in place to ensure compliance with various laws allegedly violated by El Cajon; (3) the persons involved in ensuring El Cajon's alleged compliance with such laws; (4) whether Roberts's claims against El Cajon were "typical" of the claims of the putative class members (both for class 1 and class 2); (5) whether Roberts was an "inadequate class representative" for the putative class members (same); (6) whether Roberts's action raises predominant common issues of fact and/or law (same); and (7) whether El Cajon has been subject to similar lawsuits involving similar conduct as alleged by Roberts in her complaint.

If arbitration was ordered in the instant case, much, if not all, of this discovery likely would be rendered useless to Roberts in her lawsuit against El Cajon in light of the language in the arbitration provision expressly waiving class actions. According to El Cajon, the waiver of class actions in the arbitration provision at issue here is fully enforceable in light of the recently decided United States Supreme Court case of *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___, ___ [179 L.Ed.2d 742, 131 S.Ct. 1740, 1746] (*Concepcion*).

Briefly, in *Concepcion* the Supreme Court considered the unconscionability/enforceability of an arbitration agreement in a consumer sales contract. The alleged unconscionability involved in *Concepcion* was an express provision included in the arbitration agreement denying arbitration of class action claims. The Supreme Court determined the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) prohibited California from conditioning the enforceability of an arbitration agreement on the availability of arbitration for classwide claims, and ruled the FAA preempted *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 162 [30 Cal.Rptr.3d 76, 113 P.3d 1100] (*Discover Bank*). In that case, our own Supreme Court had decided that an express contractual denial of arbitration of classwide claims rendered an arbitration agreement in a consumer contract substantively unconscionable: "[W]hen the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then . . . the waiver becomes in practice the exemption of the party 'from responsibility

for [its] own fraud, or willful injury to the person or property of another.' [Citation.] Under these circumstances, such waivers are unconscionable under California law and should not be enforced. [Civ. Code, § 1668]." (*Discover Bank, supra*, 36 Cal.4th at pp. 162–163.)

Assuming, without deciding, the waiver of classwide claims in the arbitration provision at issue here is valid and enforceable in light of *Concepcion*, as El Cajon argues, we nonetheless conclude El Cajon waived arbitration when it waited five months to invoke arbitration.

Indeed, *if* El Cajon *either* had promptly moved to compel arbitration at or near the time it answered the complaint *or* informed Roberts at that time of its intention to compel arbitration (such as in its answer to the complaint), Roberts likely would not have propounded extensive written discovery involving the class action allegations in her complaint. Of course, if Roberts had been given timely notice by El Cajon of its intent to arbitrate and propounded the discovery in any event, it would have been at her peril.

However, because the record shows El Cajon waited *months* after Roberts propounded extensive written discovery (undoubtedly at great expense) to notify Roberts of its intent to arbitrate and because most, if not all, of this discovery would—under El Cajon's own analysis of *Concepcion*—be useless in arbitration, we conclude there is ample evidence in the record showing El Cajon's conduct (including in responding to this discovery) was inconsistent with the intent to arbitrate and that Roberts was prejudiced by that conduct. (See *St. Agnes Medical Center v. PacifiCare of California, supra*, 31 Cal.4th at p. 1196.)[10]

---

[10] At oral argument, El Cajon argued it waited to compel arbitration because it was unsure of the state of the law regarding the enforceability of the waiver of classwide claims in the arbitration provision at issue here, as evidenced by the United States Supreme Court's recent decision in *Concepcion* and by other recent cases (see, e.g., *Smith v. Americredit Financial Services, Inc.* (S.D.Cal., Dec. 11, 2009, No. 09cv1076 DMS (BLM)) 2009 WL 4895280). We find this excuse unavailing. El Cajon cannot proverbially "have its cake and eat it too." That is, if El Cajon wanted to arbitrate the dispute involving Roberts, it should have promptly invoked arbitration *regardless* of the validity of the waiver provision in the arbitration provision. After all, *Concepcion* was not decided until April 2011, more than a year after El Cajon moved to compel arbitration. In addition, El Cajon's argument assumes that *Concepcion* would have been decided favorably to El Cajon, which of course was entirely speculative at the time El Cajon moved to compel arbitration. Finally, *Concepcion* arguably does not preempt "all California law relating to unconscionability" because "[g]eneral state law doctrine pertaining to unconscionability is preserved unless it involves a defense that applies 'only to arbitration or that derive[s its] meaning from the fact that an agreement to arbitrate is at issue.' " (*Mission*

 In addition, we conclude El Cajon acted inconsistently with an intent to arbitrate and that such conduct prejudiced Roberts when, during the "modest" five-month delay between El Cajon's answer and its motion to compel, El Cajon identified putative class members (in class 1), contacted them and offered to settle with them for $50 in return for a dismissal of all claims in this lawsuit.

El Cajon argues its conduct in identifying and contacting putative class members and seeking to resolve their claims was "completely outside the litigation system" and thus does not support waiver. We disagree.

Instead, the record shows El Cajon offered the putative class members $50 to settle their claims *in this lawsuit* in order to mitigate their damages *in this lawsuit*. What's more, El Cajon conditioned settlement on the putative class members' release of their claims against El Cajon stemming from *this lawsuit*, a settlement it undoubtedly would enforce, if necessary, *in this lawsuit*.[11] The record also shows about 30 putative class members accepted the settlement and ostensibly released their claims against El Cajon *in this lawsuit*.

For this separate and independent reason, we conclude there is sufficient evidence in the record to support the findings that El Cajon acted inconsistently with an intent to arbitrate and that its conduct prejudiced Roberts and her case by, among other things, reducing the size of the putative class. (See *St. Agnes Medical Center v. PacifiCare of California, supra*, 31 Cal.4th at p. 1195 [the evaluation of waiver of arbitration is fact driven]; *Burton v. Cruise, supra*, 190 Cal.App.4th at pp. 944–945 [same].)

---

*Viejo Emergency Medical Associates v. Beta Healthcare Group* (2011) 197 Cal.App.4th 1146, 1158, fn. 4 [128 Cal.Rptr.3d 330], quoting *Concepcion, supra*, 563 U.S. at p. ___ [131 S.Ct. at p. 1746].) Here, whether the arbitration provision was valid and enforceable notwithstanding the waiver of classwide claims in that provision was an issue between the parties, as evidenced by the trial court's alternative finding the arbitration provision was substantively and procedurally unconscionable. (See fn. 7, *ante*.)

[11] *If*, in the future, any putative class members who accepted El Cajon's $50 settlement sought to back out of that settlement or otherwise wanted to be included in a class *if* one or more classes were certified, El Cajon undoubtedly would move *in this lawsuit* to invoke the release agreed to by the member or members when each signed the back of the $50 check and cashed it, and to argue such members are excluded from class treatment based on that settlement. Far from being "outside," much less "completely outside" the litigation system, El Cajon's settlements with putative class members clearly are a direct result of *this lawsuit*.

## DISPOSITION

The order denying El Cajon's petition to compel arbitration is affirmed. Roberts to recover her costs of appeal.

Nares, J., and Irion, J., concurred.