Filed 8/7/13  Schmidt v. Service Corp. International CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHAEL SCHMIDT,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SERVICE CORPORATION<br>INTERNATIONAL et al.,<br><br>    Defendants and Respondents. | B242154<br><br>(Los Angeles County<br>Super. Ct. No. BS130021) |

        APPEAL from a judgment (order of dismissal) of the Superior Court of

Los Angeles County, Susan Bryant-Deason, Judge.  Affirmed.

        Thomas & Solomon, The Strong-Todd House, Annette M. Gifford, and Sarah E.

Cressman for Plaintiff and Appellant.

        Gurnee & Daniels, Joan A. Mason; Stinson Morrison Hecker, and Lonnie J.

Williams, Jr. (Pro Hac Vice) for Defendants and Respondents.

Appellant Michael Schmidt filed a petition to compel respondents, his former employer and his employer's alleged affiliates, to arbitrate his overtime and other wage claims.[1]  The trial court denied and dismissed Schmidt's petition because (1) the evidence failed to show that all of the respondents were bound by the arbitration agreement, and (2) his delay in requesting arbitration constituted a waiver of the right to arbitration.  In this appeal from the judgment (order of dismissal), we affirm.

## BACKGROUND

This dispute involves Schmidt's two and a half year employment with respondent SCFS, which began in March 2005, when he became an apprentice funeral director at respondent Pierce Brothers, and ended in November 2007, when he was a funeral director at respondent Eternal Valley.

When Schmidt began working for SCFS, he signed a "Principles of Employment" agreement (agreement) with an entity identified in the agreement as "the Company."  The agreement contained an arbitration clause[2] that required Schmidt and the Company to

---

[1]    There are four groups of respondents:
   (1)    The parent company, Service Corporation International (SCI), which allegedly owns the company that employed Schmidt.
   (2)    The company that employed Schmidt, SCI California Funeral Services, Inc. (SCFS), at its two locations:  Pierce Brothers Valhalla San Fernando Valley Care Center (Pierce Brothers) and Eternal Valley Memorial Park (Eternal Valley).  Both Pierce Brothers and Eternal Valley are fictitious business names of SCFS.
   (3)    The three alleged affiliates of SCI:  SCI Funeral and Cemetery Purchasing Cooperative, Inc., SCI Western Market Support Center, L.P., also known as (a/k/a) SCI Western Market Support Center, Inc., and California Cemetery and Funeral Services, LLC.
   (4)    The two individual respondents, Jane D. Jones and Thomas Ryan.

[2]    The arbitration clause stated as follows:
"1. Matters Subject To Arbitration.  Employee and the Company agree that, except for the matters identified in Section 2 below and except as otherwise provided by law, all disputes relating to any aspect of Employee's employment with the Company

2

shall be resolved by binding arbitration.  This includes, but is not limited to, any claims against the Company, its affiliates or their respective officers, directors, employees, or agents for breach of contract, wrongful discharge, discrimination, harassment, defamation, misrepresentation, and emotional distress, as well as any disputes pertaining to the meaning or effect of this Agreement.  The arbitration shall be conducted in accordance with the procedures attached hereto as Exhibit 'A.'  This agreement to arbitrate shall cover disputes arising both before and after the execution of this document, except to the extent that any litigation has already been filed as of the date hereof.

"2.  Exclusions.  It is expressly agreed and understood that this Agreement shall not govern the following:  (1) any claims brought under federal discrimination laws (including Title VII of the Civil Rights Act) or any other federal laws administered by the Equal Employment Opportunity Commission, (2) claims for workers' compensation or unemployment benefits, or (3) claims brought to enforce any noncompetition or confidentiality agreement which may exist between the parties.

"3.  Notification/Timeliness Of Claims.  Any claim which either party has against the other, other than a claim based on employment discrimination, must be presented in writing by the claiming party to the other within one year of the date the claiming party knew or should have known of the facts giving rise to the claim.  Otherwise, the claim shall be deemed waived and forever barred even if there is a federal or state statute of limitations which would have given more time to pursue the claim.  Discrimination claims shall be subject to state and federal laws prescribing the limitation period for filing such a claim.

"4.  Legal Counsel/Costs.  Each party may retain legal counsel and shall pay its own costs and attorneys' fees, regardless of the outcome of the arbitration, provided however, that the arbitrator may award attorneys' fees and/or costs to the prevailing party when expressly authorized by statute to do so.  All other costs pertaining to the arbitration shall be paid by the Company.

"NOTICE TO EMPLOYEE:  BY SIGNING THIS AGREEMENT, YOU ARE AGREEING TO HAVE ANY AND ALL DISPUTES BETWEEN YOU AND YOUR COMPANY (EXCEPT THOSE SPECIFICALLY EXCLUDED IN SECTION 2 ABOVE AND THOSE OTHERWISE EXCLUDED BY APPLICABLE LAW, IF ANY) DECIDED BY BINDING ARBITRATION AND YOU ARE WAIVING YOUR RIGHT TO A JURY OR COURT TRIAL.

"AFFIRMATION OF AT-WILL EMPLOYMENT STATUS:  THE PARTIES ACKNOWLEDGE AND AGREE THAT, UNLESS THEY ARE PARTIES TO A WRITTEN EMPLOYMENT AGREEMENT WHICH GUARANTEES EMPLOYMENT FOR A DEFINITE PERIOD OF TIME, EMPLOYEE IS AN EMPLOYEE TERMINABLE AT-WILL, AND THAT THE COMPANY MAY ALTER THE TERMS OF, OR TERMINATE, EMPLOYEE'S EMPLOYMENT IN ITS SOLE DISCRETION, FOR ANY REASON OR NO REASON.  EMPLOYEEE FURTHER ACKNOWLEDGES THAT HE/SHE IS EMPLOYED BY THE COMPANY IDENTIFIED BELOW AND NOT BY SUCH COMPANY'S ULTIMATE PARENT

submit all disputes regarding any aspect of his employment (except those disputes expressly excluded from the agreement) to binding arbitration. The arbitration clause applied, but was "not limited to, any claims against the Company, its affiliates or their respective officers, directors, employees, or agents for breach of contract, wrongful discharge, discrimination, harassment, defamation, misrepresentation, and emotional distress, as well as any disputes pertaining to the meaning or effect of this Agreement."

The arbitration clause required that a written claim be presented by the party seeking arbitration (the claimant) within one year of the date when the claimant knew or should have known of the facts giving rise to the claim. It stated that if the claimant failed to present a timely claim, "the claim shall be deemed waived and forever barred even if there is a federal or state statute of limitations which would have given more time to pursue the claim."

On April 1, 2011, more than three years after his employment had ended, Schmidt submitted a "Demand for Arbitration" of his state law claims for unpaid overtime and other wages. The arbitration demand listed disputes arising "out of injuries . . . caused by respondents' violations of various California state laws including California Labor Code § 201, *et seq.*, § 202, *et seq.*, § 203, *et seq.*, §§ 226.7 and 512, *et seq.*, §§ 226(a) and 226.3, *et seq.*, § 1194, *et seq.* and California Business and Profession[s] Code § 17200, et seq. and/or breach of contract, fraud and misrepresentation laws." The arbitration demand was submitted to: (1) the parent company, SCI; (2) SCI's three alleged affiliates (SCI Funeral and Cemetery Purchasing Cooperative, Inc., SCI Western Market Support Center, L.P., a/k/a SCI Western Market Support Center, Inc., and California Cemetery

COMPANY, SERVICE CORPORATION INTERNATIONAL, OR ANY OTHER AFFILIATE OF THE COMPANY.

"MODIFICATIONS. NEITHER EMPLOYEE'S AT-WILL STATUS NOR ANY OF THE ABOVE PROVISIONS PERTAINING TO ARBITRATION MAY BE MODIFIED EXCEPT BY A WRITTEN AGREEMENT SIGNED BY BOTH EMPLOYEE AND THE COMPANY.

"I have read the above, am familiar with its terms and agree that my relationship with my employer shall be governed thereby."

and Funeral Services, LLC.), and (3) four individuals (Jane D. Jones, Gwen Petteway, Thomas Ryan, and Curtis Briggs).

On November 17, 2011, Schmidt petitioned the superior court for an order to compel arbitration against respondents: (1) the parent company, SCI; (2) SCFS and the businesses (Pierce Brothers and Eternal Valley) where he was employed; (3) SCI's three alleged affiliates (SCI Funeral and Cemetery Purchasing Cooperative, Inc., SCI Western Market Support Center, L.P., a/k/a SCI Western Market Support Center, Inc., and California Cemetery and Funeral Services, LLC.); and (4) two individuals (Jane D. Jones and Thomas Ryan).

In opposition, respondents collectively asserted several defenses including waiver.[3] Respondents argued that Schmidt had waived the right to arbitrate by (1) committing acts inconsistent with the right to arbitrate, and (2) failing to submit a timely arbitration demand within one year of the date when he knew or should have known of the facts giving rise to the claim.

As to the acts inconsistent with the right to arbitration, the evidence showed that Schmidt had pursued litigation as an "opt-in plaintiff" in two putative class action lawsuits against all of the respondents except SCFS and California Cemetery and Funeral Services, LLC: *Stickle v. Service Corporation International et al*. (D. Ariz.) Case No. 08-cv-083-PHX-MHM/JWS (*Stickle*) and *Riggio v. Service Corporation International et al.* (D. Ariz.) Case No. 10-cv-01265-PHX-MHM/JWS (*Riggio*). Schmidt filed notices of consent to become a party in *Stickle* in February 2008, and in *Riggio* in July 2010. In both notices, Schmidt stated that he was seeking "'payment of unpaid wages under federal or state law, including overtime wages and related relief against any of my employer(s) including any individual(s) who may be considered my employer(s) on my behalf and other former employees . . . .'"

---

[3]     Respondents also argued that Schmidt had failed to prove the existence of a written arbitration agreement with SCI, SCI's three alleged affiliates, and the two individual respondents. Because we are affirming the trial court's ruling on the basis of waiver, we need not discuss this aspect of the parties' evidence.

5

In opposition to the petition to compel arbitration, respondents argued that after incurring significant fees and costs to defeat class certification in *Stickle*, it would be prejudicial to force them to incur additional fees and costs to defend the identical claims in arbitration. Respondents pointed out that if Schmidt had proceeded directly to arbitration, he could not have obtained the type of discovery that was obtained in *Stickle* and *Riggio*.

Respondents submitted the declaration of their attorney Lonnie J. Williams, Jr., who defended them in *Stickle* and *Riggio*. Williams attested that: (1) Schmidt "participated in the *Stickle* litigation and discovery from February 8, 2008, until April 25, 2011, the date of dismissal"; (2) respondents had taken over 60 depositions in order to defeat class certification; and (3) respondents had issued over 1,000 sets of interrogatories and reviewed over 740 discovery responses.

The superior court denied Schmidt's petition to compel arbitration, stating in its order: "The court finds that the Petitioner has failed to present evidence showing that the Respondents who filed a Response to the Petition agreed in writing to arbitrate the claims of the Petitioner. The court also finds that the Petitioner waived the right to seek arbitration by delaying his request for four (4) years since he was last employed by Eternal Valley Memorial Park."

The petition was dismissed with prejudice on March 22, 2012. This timely appeal followed.

## DISCUSSION

Schmidt contends the trial court erred in finding: (1) the arbitration agreement was not binding on all respondents, and (2) a waiver of the right to arbitrate. In light of our affirmance of the finding of waiver, we do not decide whether the arbitration agreement was binding on all respondents.

6

## I.    Standard of Review

The basic rule of appellate review is that the judgment or order of the trial court is presumed to be correct and error must be affirmatively shown.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

"The question of waiver is generally one of fact.  (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 [*St. Agnes*]; *Roberts v. El Cajon Motors*, *Inc.* (2011) 200 Cal.App.4th 832, 841.)  The waiver issue may be reviewed de novo when the question is whether the superior court properly applied the correct legal standard to the undisputed facts:  '"When . . . the facts are undisputed and only one inference may reasonably be drawn, the issue [of waiver] is one of law and the reviewing court is not bound by the trial court's ruling." [Citation.]'  (*St. Agnes*, at p. 1196 . . . .)" (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1202.)

## II.    The Failure to Timely Demand Arbitration Is a Failure of a Condition Precedent to the Right to Arbitrate

Schmidt's opening brief analyzes the trial court's finding of waiver solely in terms of a purported finding that his pursuit of litigation—through class certification in *Stickle* and *Riggio*—was so inconsistent with the right to arbitration that it constituted a waiver of that right.  The trial court's written order, however, did not mention Schmidt's participation in *Stickle* or *Riggio* or any other litigation.  Instead, the order spoke solely of delay.  The order stated that "Petitioner waived the right to seek arbitration by delaying his request for four (4) years since he was last employed by Eternal Valley Memorial Park."

Based on our review of the record, we conclude the trial court's finding of waiver was grounded on Schmidt's failure to submit a timely claim within the one-year period specified in the agreement.  It was undisputed that according to the agreement's arbitration clause, Schmidt was required to present a written claim for arbitration within one year of the date when he knew or should have known of the facts giving rise to the

7

claim. Because the filing of a claim initiated the arbitration process, it constituted the functional equivalent of filing an arbitration demand.

The concept that a timely arbitration demand is a prerequisite to the right to arbitrate is well established. As the California Supreme Court stated in *Platt Pacific*, *Inc. v. Andelson* (1993) 6 Cal.4th 307 (*Platt*), "[t]he leading case for the rule that arbitration must be demanded within the time agreed upon by the parties is a 1946 decision by the Court of Appeal in *Jordan v. Friedman* [(1946)] 72 Cal.App.2d 726. Significantly, a review of *Jordan* reveals that the court there did not use the term 'waiver' in the sense of voluntary relinquishment of a known right.

"In *Jordan*, a subcontractor sued a general contractor to foreclose a mechanic's lien. Relying on an arbitration clause in the subcontract, the general contractor filed a motion to stay the proceedings pending arbitration. The parties' subcontract required that a written demand for arbitration be filed with the architect no later than the time of final payment. The general contractor, however, made his demand for arbitration to the subcontractor rather than to the architect, and did so after the time for final payment had expired. The Court of Appeal held that, in failing to make a written arbitration demand to the architect as required by the contract, and in not making the demand until three months after the contractually specified date, the general contractor was foreclosed from compelling arbitration. The court went on to state: 'Where a contract provides that a demand for arbitration must be filed within a stated time and the party desiring arbitration permits the agreed period to pass without making demand, he *waives* his right to arbitration.' (*Jordan v. Friedman*, *supra*, 72 Cal.App.2d at p. 727, italics added.) It cannot be said of the general contractor in *Jordan* that it intended to voluntarily relinquish its right to arbitration, for it had demanded arbitration both orally and in writing. Thus, the *Jordan* court's use of the term 'waiver' in its holding was simply a shorthand way of stating that, by failing to perform certain acts specified in the parties' contract, the general contractor had lost the right to arbitration." (*Platt*, *supra*, 6 Cal.4th at pp. 315-316; see *St. Agnes*, *supra*, 31 Cal.4th at p. 1195, fn. 4 ["In the arbitration

8

context, '[t]he term "waiver" has also been used as a shorthand statement for the conclusion that a contractual right to arbitration has been lost.'"].)

"Private arbitration is a matter of agreement between the parties and is governed by contract law. (See, e.g., *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 8; *Ericksen*, *Arbuthnot*, *McCarthy*, *Kearney & Walsh*, *Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323; Code Civ. Proc., § 1280 et seq.) Under the law of contracts, parties may expressly agree that a right or duty is conditional upon the occurrence or nonoccurrence of an act or event. (See, e.g., Civ. Code, § 1434 et seq.; Rest.2d Contracts, § 224; 3A Corbin, Contracts (1960) § 631, p. 21; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 722, p. 654.) Thus, a condition precedent is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises. (Civ. Code, § 1436; 1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 722, p. 654.)

"When, as here, the parties have agreed that a demand for arbitration must be made within a certain time, that demand is a condition precedent that must be performed before the contractual duty to submit the dispute to arbitration arises. The nonoccurrence of a condition precedent may be excused for a number of legally recognized reasons. But when a party has failed to fulfill a condition that was within its power to perform, it is not an excuse that the party did not thereby intend to surrender any rights under the agreement. (See 5 Williston, Contracts (3d ed. 1961) § 676, pp. 219-223.) A contrary conclusion would undermine the law of contracts by vesting in one contracting party the power to unilaterally convert the other contracting party's conditional obligation into an independent, unconditional obligation notwithstanding the terms of the agreement. Thus, it is inconsistent with the law governing private arbitration agreements to assert, as plaintiffs do here, that the failure to satisfy the contractual requirement of making a timely demand for arbitration has no effect absent an intent to abandon submission of the dispute to arbitration.

"Moreover, plaintiffs' assertion is contrary to the rule that the failure to timely demand arbitration is a 'waiver' of the right to arbitrate. As we shall see, the term

9

'waiver,' as used in the context of the failure to timely demand arbitration, refers not to a voluntary relinquishment of a known right, but to the loss of a right based on a failure to perform an obligation." (*Platt*, *supra*, 6 Cal.4th at pp. 313-314.)

## III. Schmidt Fails to Refute the Trial Court's Finding that His Request for Arbitration Was Not Submitted Within the One-Year Deadline

As previously mentioned, Schmidt's opening brief does not address the denial of his petition to compel arbitration based on his failure to make a timely request within the one-year period specified in the agreement. (See *Platt*, *supra*, 6 Cal.4th at pp. 313-314.) Schmidt focuses instead on the six-factor test to determine whether a party waived the right to compel arbitration by participating in litigation. (See *St. Agnes*, *supra*, 31 Cal.4th at p. 1196.) The six-factor test has no bearing on the loss of a right based on a failure to perform an obligation.

Even if the arguments raised by Schmidt in the opening brief were correct, they fail to refute the dispositive finding that the request for arbitration was untimely and, therefore, a condition precedent to the right to arbitration was not met. "An appellate court is not required to examine undeveloped claims, nor to make arguments for parties. [Citation.]" (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

Applying the basic rule that a judgment or order is presumed to be correct and error must be affirmatively shown (*Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564), we conclude that Schmidt has failed to meet his burden of setting forth a reasoned argument, supported by applicable authority, to refute the trial court's determination that, because he did not present a timely request for arbitration within the one-year period set forth in the agreement, the right to arbitration was lost due to the failure of a condition precedent. (See *Platt*, *supra*, 6 Cal.4th at pp. 313-314.)

At oral argument, Schmidt claimed, for the first time, that he preserved his right to arbitrate by filing the requisite claim. Initially, we note that we need not consider an argument not raised in the briefs. (*People v. Thompson* (2010) 49 Cal.4th 79, 110, fn. 13 [because counsel failed to raise issue in briefs, it was improper to raise it at oral

10

argument].) On the merits, Schmidt's contention is not supported by the record. There is no evidence that he filed a written claim directly with SCFS within the required one-year period, and Schmidt does not argue otherwise. Instead, he asserts his written consent to opt in the *Stickle* litigation was sufficient to give SCFS notice. This is so, Schmidt urges, because SCFS was a defendant in that action and was advised that he was joining the litigation for the purpose of seeking payment of wages under federal and state law. We are not persuaded. The arbitration agreement requires actual, not constructive, notice of claims.

## IV. Schmidt's Participation in the Fair Labor Standards Act Litigation Did Not Toll the One-Year Limitations Period

In his reply brief, Schmidt, for the first time, cited *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665 and contended that his participation in the Fair Labor Standards Act litigation tolled the one-year limitations period in the arbitration clause. The contention fails for two reasons: (1) arguments raised for the first time in a reply brief will not be considered (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764); and (2) *Pearson* does not support Schmidt's position. In *Pearson*, the parties did not dispute that Code of Civil Procedure section 1281.12 applied because the plaintiff commenced a lawsuit based on the same claim that was the subject of the proposed arbitration.[4] (*Id.* at p. 673.) Here, however, Schmidt does not meet two of the requirements of section 1281.12. First, he did not initiate the action that he now alleges tolled the limitations period. He was a participant in litigation that was initiated by other

---

**4** Code of Civil Procedure section 1281.12 provides: "If an arbitration agreement requires that arbitration of a controversy be demanded or initiated by a party to the arbitration agreement within a period of time, the commencement of a civil action by that party based upon that controversy, within that period of time, shall toll the applicable time limitations contained in the arbitration agreement with respect to that controversy, from the date the civil action is commenced until 30 days after a final determination by the court that the party is required to arbitrate the controversy, or 30 days after the final termination of the civil action that was commenced and initiated the tolling, whichever date occurs first."

parties.  Second, the civil litigation Schmidt participated in was not based on the claims he now seeks to arbitrate.  In his petition to compel, Schmidt alleged that he "has never raised the state law claims he asserts here in any litigation."  As a result, the one-year limitations period in the arbitration clause was not tolled by Schmidt's participation in the federal litigation.

## DISPOSITION

The judgment (order of dismissal) is affirmed.  Respondents are entitled to their costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

SUZUKAWA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

12