Filed 6/4/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MILTON BROWN et al.,<br><br>Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>Respondent;<br><br>MORGAN TIRE & AUTO, LLC et al.,<br><br>Real Parties in Interest. | H037271<br>(Santa Clara County<br>Super. Ct. No. 110-CV178451) |

The question presented in this case is whether the Federal Arbitration Act (9 U.S.C. §§ 1-16) (FAA) permits arbitration agreements to override the statutory right to bring representative claims under the Labor Code Private Attorneys General Act of 2004 (PAGA).[1]  (Lab. Code, § 2698 et seq.)[2]  We conclude that the FAA does not demand enforcement of such an agreement.  A plaintiff suing for PAGA civil penalties is suing as a proxy for the State.  A PAGA claim is necessarily a representative action intended to advance a predominately public purpose.  When applied to the PAGA, a private agreement purporting to waive the right to take representative action is unenforceable because it wholly precludes the exercise of this unwaivable statutory right.  *AT&T*

---

[1] The same question is presently pending before the California Supreme Court. (See *Iskanian v. CLS Transportation of Los Angeles* (2nd Dist. Div. 2), review granted Sept. 19, 2012, S204032.)

[2] Further unspecified section references are to the Labor Code.

*Mobility LLC v. Concepcion* (2011) 131 S.Ct. 1740 (*Concepcion*) does not require otherwise.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Milton Brown and Lee Moncada were employed by defendant Morgan Tire & Auto, LLC, doing business as Wheel Works. Both plaintiffs were nonexempt hourly employees. Brown was a general automotive service technician who had worked for defendant just under two years. Moncada was employed as a head mechanic for nine months.

On July 29, 2010, plaintiffs filed a putative class action lawsuit against defendant alleging violation of California's wage and hour laws. The first amended complaint alleges that defendant did not pay its hourly employees for all hours worked, did not pay overtime, failed to provide meal and rest periods, did not issue complete and accurate wage statements, did not issue pay on time, and delayed final paychecks to discharged employees. Plaintiffs also allege one cause of action under the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.). Plaintiffs seek restitution and damages. In addition, plaintiffs claim civil penalties on behalf of themselves and all other aggrieved employees as allowed by the PAGA.

In the course of their employment plaintiffs had signed an agreement to be bound by defendant's Employee Dispute Resolution Plan (EDRP). The EDRP provides that all employment related disputes will be submitted to mediation and arbitration "rather than to the courts or to governmental agencies." The EDRP further specifies: "Parties to the [EDRP] waive any right they may otherwise have to pursue, file, participate in, or be represented in Disputes brought in any court on a class basis or as a collective action or representative action. This waiver applies to any Disputes that are covered by the [EDRP] to the full extent such waiver is permitted by law. All Disputes subject to the [EDRP] must be mediated and arbitrated as individual claims. The [EDRP] specifically

2

prohibits the mediation or arbitration of any Dispute on a class basis or as a collective action or representative action."

Notwithstanding the EDRP, defendant did not raise arbitration as an affirmative defense in its answer. Defendant participated in discovery and negotiated the terms of a stipulated protective order relating to the class members. Defendant took the deposition of plaintiff Brown. Defendant also agreed to produce the names and contact information of all putative class members and agreed to participate in private mediation on a class-wide basis.

At the time plaintiffs filed this case, California law made arbitration agreements containing class action waivers[3] unenforceable in virtually all consumer cases. (*Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 162-163 (*Discover Bank*).) *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*) made class action waivers unenforceable in wage and hour cases if the trial court found that a class action would be more effective in vindicating the employees' statutory rights. On April 27, 2011, the United States Supreme Court filed *Concepcion*, *supra*, 131 S.Ct. 1740, overruling *Discover Bank*. Although *Concepcion* did not mention *Gentry*, defendant promptly filed a motion to compel arbitration, arguing that *Concepcion* impliedly overruled *Gentry* as well as *Discover Bank*. Plaintiffs opposed the motion, arguing that defendant had waived its right to arbitrate and, in any event, *Concepcion* did not affect the *Gentry* rule. The superior court concluded that *Gentry* was no longer good law, found that defendant had not waived its right to arbitrate, and granted the "motion to compel individual arbitration." Plaintiffs filed a notice of appeal from that order.

---

[3] We use the phrase, "class action waiver" as meaning the relinquishment of a right to proceed, either in a judicial or arbitral forum, as the representative of, or as a member of, a class of persons. Where it is necessary to make a distinction between judicial class actions and class arbitration, we shall do so explicitly.

Ordinarily, an order compelling arbitration is not appealable and may be reviewed only after the parties complete arbitration and appeal from the judgment. (*Muao v. Grosvenor Properties, Ltd.* (2002) 99 Cal.App.4th 1085, 1089.) Writ relief is available in exceptional circumstances. (*United Firefighters of Los Angeles v. City of Los Angeles* (1991) 231 Cal.App.3d 1576, 1581.) Since plaintiffs' arguments involve a rapidly developing area of the law, we notified the parties that we would consider the notice of appeal as a petition for writ of mandate. The matter proceeded as such and we issued an order to show cause. We now conclude that plaintiffs are entitled to some of the relief they requested.

## II.  LEGAL FRAMEWORK

In its most generic form an arbitration agreement merely requires the parties to resolve their disputes by way of arbitration, a process that is intended to be simpler, less formal, and more expeditious than the process of resolving disputes in court. (See *Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 628 (*Mitsubishi*).) As arbitration agreements have evolved, they have added features to further simplify the process. One such feature is the class action waiver, which typically binds the parties to arbitrate their disputes on an individual basis, prohibiting collective or representative actions.

Congress enacted the FAA to overcome widespread judicial antipathy to arbitration agreements. (*Concepcion, supra*, 131 S.Ct. at p. 1745.) Under the FAA arbitration agreements must be enforced according to their terms. Specifically, the FAA provides: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) The FAA reflects both a policy favoring arbitration and fundamental principles of contract. (*Concepcion, supra*, at p. 1745.) "[C]ourts must place arbitration

4

agreements on an equal footing with other contracts, [citation] and enforce them according to their terms." (*Id.* p. 1745.) The parties agree that the FAA applies in this case.

The final phrase of 9 United States Code section 2, the so-called savings clause, permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." (*Concepcion*, *supra*, 131 S.Ct. at p. 1746.)

Until 2011, *Discover Bank*, *supra*, 36 Cal.4th at pages 162 through 163 made class action waivers unenforceable if the arbitration agreement of which it is a part is a "consumer contract of adhesion," disputes between the parties will likely "involve small amounts of damages," and "it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." And *Gentry*, *supra*, 42 Cal.4th at page 463, had held that in the case of alleged systematic, class-wide Labor Code violations, a class action waiver may be unenforceable given the existence of specified factors and a trial court's conclusion that class arbitration "is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration" and that "disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations . . . ." (*Ibid.*)

This state of the law changed in April 2011, when the United States Supreme Court filed *Concepcion*, *supra*, 131 S.Ct. 1740 at page 1753, explicitly overruling *Discover Bank*. *Concepcion* held that the *Discover Bank* rule was preempted by the FAA because *Discover Bank* stood as an obstacle to the overall purpose of the FAA. (*Id.* at pp.

5

1748, 1751.)  Notwithstanding the FAA's savings clause, courts may not invalidate an arbitration agreement based upon generally applicable contract principles, such as unconscionability, if those principles are applied in a fashion that disfavors arbitration. (*Id.* at p. 1747.)  *Concepcion* reasoned that, despite the *Discover Bank* requirements that the case involve a contract of adhesion, modest individual damages, and allegations of cheating, the rule would apply to virtually all consumer arbitration agreements.  Thus, *Discover Bank* effectively inserted, retroactively, the requirement that all consumer arbitration agreements permit class-wide arbitration.  (*Id.* at p. 1744.)  Class-wide arbitration is fundamentally different than individual arbitration because it sacrifices the informality of the arbitration process, requires extensive procedural formality to protect absent class members, and greatly increases the risk to defendants by magnifying the potential liability in proceedings that are largely insulated from judicial review.  (*Id.* at p. 1751.)  Thus, requiring the parties to include class-wide arbitration in all consumer arbitration agreements discourages, rather than encourages, arbitration as a dispute resolution tool and, unless the parties had agreed to it, class-wide arbitration directly conflicts with the requirement that arbitration agreements be enforced as written. Accordingly, the *Discover Bank* rule is preempted by the FAA.  (*Ibid*.)  *Concepcion* did not mention *Gentry*.

### III.    THE QUESTIONS PRESENTED

Since *Concepcion* was decided there has developed a difference of opinion among our Courts of Appeal as to the effect of that case upon the enforceability of class action waivers in the employment context.  (See, e.g., *Iskanian v. CLS Transportation of Los Angeles*, *supra*, review granted Sept. 19, 2012, S204032 [*Concepcion* requires enforcement of class action waiver when applied to a PAGA claim]; *Franco v. Arakelian Enterprises* (2nd Dist. Div. 1), review granted Feb. 13, 2013, S207760 [*Concepcion* does not require enforcement of a class action waiver that prohibits recovery under the PAGA].)  Our Supreme Court has granted review in several cases to resolve some of

6

these differences.  The lead case before the Supreme Court is *Iskanian*, which the Supreme Court's Web site notes as presenting the following issues:  "(1) Did [*Concepcion*] impliedly overrule [*Gentry*] with respect to contractual class action waivers in the context of non-waivable labor law rights?  (2) Does the high court's decision permit arbitration agreements to override the statutory right to bring representative claims under the [PAGA]?  (3) Did defendant waive its right to compel arbitration?"[4]

In the present case, plaintiffs do not argue that *Gentry* applies to invalidate the class action waiver here.  Accordingly, we express no opinion on that issue.  Plaintiffs do ask us to weigh in on the other two issues before the Supreme Court:

First, did the defendant waive its right to compel arbitration by failing to move to compel arbitration until after *Concepcion* was decided?

Second, does *Concepcion*, *supra*, 131 S.Ct. 1740, permit arbitration agreements to override the statutory right to bring representative claims under the PAGA?

Plaintiffs' third issue is not, as of this writing, before the Supreme Court.  That is: Is the class action waiver preempted by the collective-action requirement of the National Labor Relations Act (NLRA) (29 U.S.C. § 157)?

### A. Discussion

#### 1. Did Defendant Waive Its Contractual Right to Individual Arbitration?

##### i. Standard and Scope of Review

"Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court.  [Citations.] 'When, however, the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling.' "  (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187,

---

[4] (<http://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=0&doc_id=2019694&doc_no=S204032> [as of Jun. 4, 2013].)

7

1196 (*St. Agnes*).) Because the facts in the present case are undisputed, we apply the independent standard of review.

"Both state and federal law emphasize that no single test delineates the nature of the conduct that will constitute a waiver of arbitration." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1195.) *St. Agnes* used, as a guide, a six-point test used by most of the federal circuits to determine whether a party has waived the contractual right to arbitrate. That test requires a court to consider, " ' "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' (*Sobremonte v. Superior Court* [(1998)] 61 Cal.App.4th [980,] 992, quoting *Peterson v. Shearson/American Exp., Inc.* (10th Cir. 1988) 849 F.2d 464, 467-468.)" (*Id.* at p. 1196.)

Defendant argues that since application of the FAA involves federal law, the three-factor test used by *Fisher v. A.G. Becker Paribas Inc.* (9th Cir. 1986) 791 F.2d 691, 694, is the applicable test. Since *Fisher* was decided, however, the Ninth Circuit has ruled that the determination of whether a party has waived the contractual right to arbitrate is a question of state law. (*Cox v. Ocean View Hotel Corp.* (9th Cir. 2008) 533 F.3d 1114, 1125-1126.) Accordingly, we apply the *St. Agnes* analysis.

ii.        *Acts Inconsistent with Right to Compel Arbitration*

The EDRP purports to require plaintiffs to individually arbitrate their wage and hour claims. Nevertheless, defendant actively litigated this case for 10 months before mentioning arbitration. Indeed, defendant engaged in discovery and even agreed to

8

produce the names and contact information for members of the putative class and to participate in class-wide mediation. Plaintiffs maintain that these are acts inconsistent with the right to compel arbitration. Defendant argues that until *Concepcion* was decided, the courts of this state had held that class action waivers like the one contained in the EDRP were unenforceable. Since the EDRP gave the right to individual arbitration only as "permitted by law," defendant reasonably believed it had no right to individual arbitration and any motion to enforce such a right would have been futile. *Concepcion* represented a change in the law that gave defendant an argument that the EDRP was enforceable according to its terms.

Plaintiffs argue that this case is like *Roberts v. El Cajon Motors, Inc.* (2011) 200 Cal.App.4th 832 (*Roberts*) or *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436 (*Lewis*), in which the appellate courts rejected the defendants' argument that they delayed compelling arbitration because of a concern about enforceability that was cleared up by *Concepcion.* Neither case is on point. *Roberts* rejected the argument because *Concepcion* was decided more than a year *after* the defendant filed its motion to compel arbitration. (*Roberts*, *supra*, at p. 846, fn. 10.) That is, there had not yet been any change in the law when the defendant filed its tardy motion to compel arbitration.

In *Lewis*, the defendant had delayed filing a motion to compel arbitration until after *Concepcion* was filed. According to the defendant, that was because it believed the *Discover Bank* rule made the arbitration agreement unenforceable. But as the appellate court pointed out, the plaintiff had not filed a class action. In other words, *Discover Bank* was inapplicable to the action even before *Concepcion* overturned it. (*Lewis*, *supra*, 205 Cal.App.4th at p. 448.)

Plaintiffs also argue that defendant cannot claim a motion to compel individual arbitration would necessarily have been futile prior to *Concepcion.* Plaintiffs point out that, because *Gentry* is not a categorical prohibition of class action waivers, there was some chance that defendant could have convinced a court to enforce the EDRP as written

9

even before *Concepcion* was filed. Under *Gentry*, in deciding whether to enforce a class arbitration waiver, a trial court must consider whether the potential for individual recovery would be modest, the possibility class members might suffer retaliation, the possibility that absent class members would be ill informed about their rights, and other real world obstacles to vindicating the employees' rights in individual arbitration. If, based upon these factors, the trial court concludes that class arbitration is likely to be "significantly more effective" than individual actions in vindicating the employees' rights and that disallowing a class action would "likely lead to a less comprehensive enforcement of overtime laws" the court "must invalidate the class arbitration waiver." (*Gentry*, *supra*, 42 Cal.4th at p. 463.) Given the breadth of the *Gentry* rule and the nature of the claims raised here, it was reasonable for defendant to believe, prior to *Concepcion*, that a motion to compel individual arbitration was likely to fail. *Quevedo v. Macy's*, *Inc*. (C.D. Cal. 2011) 798 F.Supp.2d 1122, 1129 (*Quevedo*), is precisely on point.

*Quevedo* was filed in March 2009 as a class-action wage and hour case against the defendant, Macy's Inc. The Macy's employment agreement contained an arbitration clause and a class-action waiver. However, "[i]n light of *Gentry*, Macy's reasonably concluded that it could not enforce the class action waiver in its arbitration agreement" and did not move to compel arbitration until after *Concepcion* was decided. (*Quevedo*, *supra*, 798 F.Supp.2d at p. 1130.) Macy's could have insisted upon arbitration but under *Gentry*, class arbitration was all but inevitable. "A right to defend against *an individual's* claims in arbitration meaningfully differs from a right to defend against *class and collective* claims in arbitration. . . . If Macy's waived any right, it was the right to defend against Quevedo's class and collective claims in arbitration." (*Ibid.*, citing *Concepcion*, *supra*, 131 S.Ct. at pp. 1751, 1743.) Accordingly, the court held that Macy's conduct was not inconsistent with a right to individual arbitration. (*Quevedo*, *supra*, at p. 1131.) The present case is factually indistinct from *Quevedo*. We find that court's reasoning to be sound and apply it to the present matter.

10

### iii. *Participation in Litigation/Prejudice to Plaintiffs*

Factors two through five of the *St. Agnes* test are related to the extent of the party's participation in the judicial litigation. As to the sixth factor, prejudice, our courts "will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1203.) We assess prejudice in light of California's strong public policy favoring arbitration. (*Id.* at p. 1204, citing, *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) "Prejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." (*St. Agnes*, *supra*, at p. 1204.) Prejudice may be found where the petitioning party used the judicial process to gain information it could not have gained in arbitration, waited until the eve of trial to seek arbitration, or delayed so long that evidence was lost. (*Ibid.*)

In this case, defendant participated in the class litigation to the extent necessary to defend the suit. In light of *Gentry*, *supra*, 42 Cal.4th 443, it was reasonable for defendant to believe that it did not have the right to enforce the individual arbitration described in the EDRP and, therefore, it would have been unreasonable to expect it to refrain from participating in the judicial process altogether. Once the law changed, defendant did not delay in seeking to compel arbitration. Defendant's motion to compel arbitration was filed on May 17, 2011, only 20 *days* after *Concepcion* was filed, and roughly 10 months after the court litigation had commenced. The rapidity with which defendant sought to enforce the arbitration agreement following the *Concepcion* decision indicates that defendant was not involved in the litigation in order to take advantage of the judicial process prior to demanding arbitration.

Plaintiffs argue that defendant propounded more discovery than may have been allowed by an arbitrator but plaintiffs have not shown how that additional discovery yielded information that defendant could not have obtained in the course of an arbitration.

11

Plaintiffs do not allege that any evidence has been lost by the 10-month delay. Nor is there any claim that defendant's actions have impaired plaintiffs' ability to have their individual disputes resolved fairly through arbitration. That is, plaintiffs have not been prejudiced.

We conclude that defendant did not waive or abandon its right to enforce the EDRP.

### 2. *The NLRA Does Not Make the Class-Action Waiver Unenforceable*

On the merits, we first consider plaintiffs' argument that the FAA does not require enforcement of the class action waiver because that would impermissibly interfere with their rights to collective action granted by the NLRA. The NLRA makes it an unfair labor practice for an employer to interfere with an employee's right "to engage in . . . concerted activities for the purpose of collective bargaining or other mutual aid or protection." (29 U.S.C. §§ 157, 158.) Plaintiffs urge us to adopt the position taken by the National Labor Relations Board (NLRB) in *D.R. Horton*, *Inc*. (2012) 357 NLRB No. 184 [2012 NLRB Lexis 11], which held that a mandatory arbitration agreement prohibiting resolution of any employment-related disputes on a class or representative basis was a violation of the NLRA.

*D.R. Horton* is not binding precedent. Although the NLRB's construction of the NLRA is entitled to great deference, the same deference is not accorded to the NLRB's interpretation of either the FAA or Supreme Court precedent. (*Owen v. Bristol Care*, *Inc*. (8th Cir. 2013) 702 F.3d 1050, 1053.) The question is one of statutory interpretation; we apply the de novo standard of review. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.)

Under the FAA, courts must enforce agreements to arbitrate according to their terms "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.' " (*CompuCredit Corp. v. Greenwood* (2012) 132 S.Ct. 665, 669, quoting *Shearson/American Express Inc. v. McMahon* (1987) 482 U.S. 220, 226.)

We find no congressional command in the NLRA that would preclude application of the FAA. Two California appellate courts have reached the same result. (*Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 514-515; *Nelsen v. Legacy Partners Residential*, *Inc.* (2012) 207 Cal.App.4th 1115, 1132-1135.) Federal district courts in the Ninth Circuit are in accord. (See *Morvant v. P.F. Chang's China Bistro*, *Inc.* (N.D. Cal. 2012) 870 F.Supp.2d 831, 845; *Jasso v. Money Mart Express*, *Inc.* (N.D. Cal. 2012) 879 F.Supp.2d 1038, 1047 ["[T]here is no language in the NLRA (or in the related Norris–LaGuardia Act) demonstrating that Congress intended the employee concerted action rights therein to override the mandate of the FAA."].) We join our state and federal colleagues in rejecting the argument.

3.      *The Class Action Waiver Is Unenforceable as Applied to the PAGA Claim*

i.   *Introduction*

We now turn to plaintiffs' argument that the class action waiver is unenforceable as applied to the PAGA claim. Plaintiffs urge us to follow *Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, 503 (*Brown*), which held that the FAA did not require enforcement of an arbitration agreement that prevented an employee from acting as a private attorney general under the PAGA. Defendant argues that *Brown* was wrongly decided and the reasoning of *Concepcion*, *supra*, 131 S.Ct. 1740 makes the instant agreement enforceable even to the extent it prevents plaintiffs from pursuing a representative PAGA action. Because there are no undisputed facts, the question is one of law calling for our de novo review. (*Turtle Ridge Media Group*, *Inc. v. Pacific Bell Directory* (2006) 140 Cal.App.4th 828, 833.)

ii.  *Analysis*

The PAGA provides that any section of the Labor Code calling for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency (LWDA) "may, as an alternative, be recovered through a civil action brought by an aggrieved employee . . . ." (§ 2699, subd. (a).) For those Labor Code sections without a specified

13

civil penalty, the PAGA establishes a default penalty and allows an aggrieved employee to bring a civil action to enforce that penalty, as well. (*Id.* subds. (f), (g)(1).) In either case, the statute describes the private action as one brought by an aggrieved employee "on behalf of himself or herself and other current or former employees . . . ." (*Id.* subds. (a), (g)(1).) As our Supreme Court has explained, an employee plaintiff suing under the PAGA "does so as the proxy or agent of the state's labor law enforcement agencies. The act's declared purpose is to supplement enforcement actions by public agencies, which lack adequate resources to bring all such actions themselves." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986 (*Arias*).) Indeed, the individual employee suing for PAGA penalties recovers only a fraction of the penalty assessed. Seventy-five percent of the penalty goes to the LWDA and 25 percent to the "aggrieved employees." (§ 2699, subd. (i).)

As we explained above, *Concepcion* clarified that, although the FAA savings clause allows arbitration agreements to be invalidated for the same reasons any other contract may be invalidated, general contract principles cannot be used in a way that disfavors arbitration. (*Concepcion*, *supra*, 131 S.Ct. at pp. 1747, 1750.) *Concepcion* overturned the *Discover Bank* rule because *Discover Bank* effectively required all consumer arbitration agreements to include the option of class arbitration and, since class arbitration is much less desirable from a defendant's point of view, the rule discouraged arbitration agreements altogether. Thus, *Discover Bank* stood as an obstacle to the purposes of the FAA, which was to enforce arbitration agreements according to their terms and promote arbitration as a means for resolving disputes. (*Id.* at pp. 1748-1749.) *Concepcion* did not consider employment contracts nor did the case address the validity of an arbitration agreement and class action waiver covering statutory rights.

It is true that, in applying the FAA, the United States Supreme Court has uniformly held that statutory rights may be enforced in an arbitral forum as well as in a judicial forum. But the high court has just as consistently noted that a contract provision

14

calling for arbitration of statutory rights is enforceable because arbitration is an acceptable method for vindicating the rights at issue. For example, in *Mitsubishi*, *supra*, 473 U.S. 614, the United States Supreme Court concluded that antitrust claims are arbitrable. (*Id.* at p. 624.) "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. . . . Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." (*Id.* at p. 628.)

*Mitsubishi* disapproved *American Safety Equipment Corp. v. J.P. Maguire & Co*. (2nd Cir. 1968) 391 F.2d 821, 826-827, which held that, since Congress had designed the antitrust laws to promote the national interest, it must have intended such claims to be resolved in the courts. *Mitsubishi* concluded that the public benefit of the antitrust laws did not require adjudication in the courts since an antitrust cause of action was more compensatory than punitive. Although the law provides for treble damages, treble damages are designed to compensate the injured plaintiff; they constitute a *private* remedy. (*Mitsubishi*, *supra*, 473 U.S. at pp. 635-636.)

*Mitsubishi* made it clear that some circumstances would make an arbitration agreement unenforceable. Noting that the contract before it contained both a choice-of-forum clause and a choice-of-law clause, the court commented, "[I]n the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy." (*Mitsubishi*, *supra*, 473 U.S. at p. 637, fn. 19.) "[S]o long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." (*Id.* at p. 637; see also, *Shearson/American Express Inc. v. McMahon*, *supra*, 482 U.S. 220, 242 [holding that claims based on the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§

15

1961-1968) are subject to arbitration: "[T]here is no inherent conflict between arbitration and the purposes underlying [the treble damages provision]."].)

In sum, any statute providing a private remedy that may be effectively adjudicated in the arbitral forum must be arbitrated if that is what the parties have agreed to do. But neither *Mitsubishi* nor *Concepcion*, nor any other United States Supreme Court case of which we are aware, has held that the FAA requires enforcement of a private agreement that wholly prevents the exercise of a statutory right intended for a predominantly public purpose. *Brown*, *supra*, 197 Cal.App.4th at page 503, upon which plaintiffs rely, distinguished *Concepcion* and other United States Supreme Court precedent, noting that none of the high court's cases address a statute like the PAGA.

In *Brown*, *supra*, 197 Cal.App.4th 489, the arbitration agreement prohibited the employee from suing as a private attorney general. *Brown* found the waiver unenforceable, holding, "If the FAA preempted state law as to the unenforceability of the PAGA representative action waivers, the benefits of private attorneys general actions to enforce state labor laws would, in large part, be nullified." (*Id.* at p. 502.) In the present case, the EDRP does not explicitly prohibit private attorney general actions but it does prohibit representative actions. Accordingly, it effectively prohibits the employee from prosecuting any PAGA claim at all.

The PAGA is not the kind of law that serves both a remedial and deterrent purpose; the principal purpose of the PAGA is the public purpose of deterrence. It is beyond question that when the LWDA is acting upon alleged violations it is acting on behalf of the public. When the individual employee has brought the suit, he or she is likewise acting on behalf of the public. As our Supreme Court has stated: "[A]n aggrieved employee's action under the [PAGA] functions as a *substitute* for an action brought by the government itself . . . ." (*Arias*, *supra*, 46 Cal.4th at p. 986, italics added.) The PAGA "authorizes a representative action only for the purpose of seeking statutory penalties for Labor Code violations (Lab. Code, § 2699, subds. (a), (g)), and an action to

16

recover civil penalties 'is fundamentally a law enforcement action designed to protect the public and not to benefit private parties' (*People v. Pacific Land Research Co.* (1977) 20 Cal.3d 10, 17)." (*Ibid.*)

The obvious public purpose of the law suggests that it is necessarily a representative action. Law enforcement does not take place on an individual basis. The PAGA does not give an employee any substantive rights. The PAGA merely allows the employee to act on behalf of the state when the employer violates other sections of the Labor Code. Assuming, without deciding, that a PAGA claim may be effectively prosecuted in the arbitral forum, it must proceed as a representative action, if at all, because the representative aspect is intrinsic to the claim. A PAGA action could hardly serve as a substitute for LWDA proceedings if the action were prosecuted by aggrieved employees one at a time. On this point we part company with *Quevedo*, *supra*, 798 F.Supp.2d at page 1141, in which the federal district court held that a class action waiver had to be enforced as applied to the PAGA claim, which meant that the plaintiff could pursue only an individual PAGA claim in the arbitration. Our conclusion, in line with *Brown*, *supra*, 197 Cal.App.4th at page 503, is that there are no separate individual claims in a PAGA action; the individual must bring a PAGA claim as a representative action on behalf of himself or herself and other aggrieved employees. (See also, *Urbino v. Orkin Services of California*, *Inc*. (C.D. Cal. 2011) 882 F.Supp.2d 1152, 1167.)

We recognize that *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20 (*Gilmer*), held that an arbitration agreement in a case under the Age Discrimination in Employment Act of 1967 (ADEA) (29 U.S.C. §§ 621-634) was enforceable even though it precluded class-wide adjudication of alleged violations. The court noted, "[I]t should be remembered that arbitration agreements will not preclude the *EEOC* [Equal Employment Opportunity Commission] from bringing actions seeking class-wide and equitable relief." (*Gilmer*, *supra*, at p. 32.) In the case of the PAGA, however, when the employee brings a PAGA claim it does so *in place of* the LWDA. Indeed, the employee

17

can file a PAGA claim only if the LWDA has chosen not to pursue the action itself. (§ 2699.3.) Consequently, precluding the employee's action effectively extinguishes the claim and insulates the employer from liability for the penalties called for by the PAGA.

Citing *Marmet Health Care Center Inc. v. Brown* (2012) 132 S.Ct. 1201 (*Marmet*), defendant maintains that public policy is not a basis for refusing to enforce an arbitration agreement according to its terms. In *Marmet*, the West Virginia Supreme Court had held that the FAA did not pre-empt a categorical rule against predispute arbitration agreements applicable to personal injury claims against nursing homes. (*Id.* at p. 1204.) The Supreme Court reversed. Quoting *Concepcion*, *supra*, 131 S.Ct. at page 1747, the Supreme Court explained, "As this Court reaffirmed last Term, '[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.' . . . West Virginia's prohibition against predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes is a categorical rule prohibiting arbitration of a particular type of claim, and that rule is contrary to the terms and coverage of the FAA." (*Marmet*, *supra*, at pp. 1203-1204.) The present case is different.

*Marmet* involved a state law that categorically prohibited individuals from agreeing to arbitrate routine common law claims for personal injury to themselves. Such claims are private claims that individuals may agree to have adjudicated by arbitration and, if they do, the FAA requires that the courts enforce their agreement. A PAGA claim is a statutory claim that provides a public remedy. It is true that plaintiffs agreed not to take any representative action with regard to their employment related claims against defendant. But their agreement is unenforceable as applied to the PAGA. As our Supreme Court has counseled, arbitration agreements that encompass *unwaivable* statutory rights must be subject to particular scrutiny. "This unwaivability derives from two statutes that are themselves derived from public policy. First, Civil Code section 1668 states: 'All contracts which have for their object, directly or indirectly, to exempt

18

anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.' 'Agreements whose object, directly or indirectly, is to exempt [their] parties from violation of the law are against public policy and may not be enforced.' [Citation.] Second, Civil Code section 3513 states, 'Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement.' " (*Armendariz v. Foundation Health Psychcare Services*, *Inc.* (2000) 24 Cal.4th 83, 100.) Waiver of the right to pursue a representative PAGA action (in court or in arbitration) is unenforceable under these general contract principles because it amounts to the waiver of a right established for a public reason and effectively exempts the employer from responsibility for its violation of the law.

Furthermore, nothing in the PAGA "limit[s] an employee's right to pursue or recover other remedies available under state or federal law, either separately or concurrently with an action taken under this part." (§ 2699, subd. (g)(1).) Thus, the employee retains his or her individual claim for damages or restitution separate from the right to pursue civil penalties under the PAGA. To be sure, the PAGA provides only a remedy; it confers no substantive rights of its own. Since imposition of the PAGA's purely punitive civil penalties may easily be excluded from the scope of an arbitration agreement, we cannot predict that requiring representative adjudication of a PAGA claim will necessarily discourage arbitration of disputes concerning the substantive Labor Code violations. (*Concepcion*, *supra*, 131 S.Ct. at p. 1751.) Thus, our conclusion that a class action waiver is unenforceable when applied to the PAGA is not a categorical rule prohibiting arbitration of a certain type of claim.

Finally, our conclusion does not require invalidating the EDRP as a whole. "[C]ourts may enforce contracts that illegally contravene public rights, so long as the objectionable provisions can be severed." (*Abramson v. Juniper Networks*, *Inc*. (2004) 115 Cal.App.4th 638, 659.) As applied to the PAGA claim, the EDRP's class action

19

waiver amounts to the waiver of a right established for a public purpose and effectively exempts defendant from responsibility for its own alleged violation of the law. Accordingly, it is void to the extent it prevents plaintiffs from pursuing PAGA's civil penalties. Plaintiffs have offered no viable challenge to the remainder of the EDRP. It follows that respondent court erred in compelling individual arbitration of plaintiffs' PAGA claim.

There is no basis for requiring arbitration of the claim on a representative basis because defendant has not agreed to arbitrate any representative actions. (See *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* (2010) 130 S.Ct. 1758, 1775 ["party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."].) It follows that the PAGA claim must be excluded from the order compelling arbitration and stayed pending resolution of the arbitration.

## IV.   DISPOSITION

Let a writ of mandate issue directing respondent superior court to vacate its order granting defendant's motion to compel individual arbitration and stay this action. The court shall enter a new order (1) granting defendant's motion to compel arbitration with respect to all of plaintiff's claims except the claim for civil penalties under the Private Attorney General Act (Lab. Code, § 2698 et seq.), and (2) staying the action as to all of

plaintiff's claims, including the claim under the Private Attorney General Act, pending resolution of the arbitration.  Each party to bear its own costs.


_____
Premo, J.


WE CONCUR:


_____
Rushing, P.J.


_____
Elia, J.

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 110-CV178451 |
| Trial Judge: | Hon.  Peter H. Kirwan |
| Counsel for Petitioners:<br>Milton Brown and Lee Moncada | Initiative Legal Group<br>Melissa Grant<br>Glenn A. Danas<br>Katherine W. Kehr |
| Counsel for Real Parties in Interest:<br>Morgan Tire & Auto | Klatte, Budensiek & Young-Agriesti<br>E.W. Klatte, III<br>Summer Young Agriesti<br><br>Heikaus Weaver<br>Christopher Michael HeikausWeaver |
| Counsel for Respondent:<br>Superior Court of Santa Clara County | No appearance for respondent |