Filed 5/10/22; on rehearing (prior 4/14/22 nonpub opinion vacated)

# CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PETER QUACH,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>CALIFORNIA COMMERCE CLUB, INC.,<br><br>　　Defendant and Appellant. | B310458<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV42445) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael L. Stern, Judge. Reversed and remanded with directions.

---

　　**\*** Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication, with the exception of part B of the Discussion.

Sanders Roberts, Reginald Roberts, Jr., Eric S. Mintz, Ayan K. Jacobs; Benedon & Serlin, Wendy S. Albers and Gerald M. Serlin for Defendant and Appellant.

Law Offices of Dilip Vithani, Dilip Vithlani; Law Office of Jonathan J. Moon and Jonathan J. Moon for Plaintiff and Respondent.

———————————

California Commerce Club, Inc. (Commerce Club) appeals from an order denying its motion to compel arbitration of a dispute with its former employee, Peter Quach, respondent here. Quach argued below that Commerce Club had waived its right to arbitrate by waiting 13 months after the filing of the lawsuit to move to compel arbitration, and by engaging in extensive discovery during that period. Quach claimed the delay prejudiced him by forcing him to expend time and money preparing for litigation. The trial court agreed, finding Commerce Club had waived the right to arbitrate by propounding a "large amount of written discovery," taking Quach's deposition, and expending "significant time meeting and conferring."

We disagree with the trial court. Our Supreme Court has made clear that participation in litigation alone cannot support a finding of waiver, and fees and costs incurred in litigation alone will not establish prejudice on the part of the party resisting arbitration. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1203 (*St. Agnes Medical Center*).) This rule has particular force here, where Quach admitted he incurred no costs in litigation that he would not otherwise have expended had the case gone to arbitration earlier.

2

Although Quach argues later Supreme Court authority has approved of Court of Appeal cases diluting the rule from *St. Agnes Medical Center*, those cases nonetheless involved a showing that a party's unreasonable delay in asserting the right to arbitrate prejudiced the party resisting arbitration. That showing is absent in the instant case.

In the unpublished portion of the opinion, we reject Quach's alternative argument that the arbitration agreement is unconscionable.

Accordingly, we reverse and direct the trial court to grant Commerce Club's motion to compel arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Commerce Club operates a hotel and casino in Commerce, California. In 1989, it hired Quach to supervise activity on the gambling floor of the casino.

In 2015, Commerce Club required all its employees to sign a new arbitration policy as a condition of continued employment. The agreement required employees to submit any covered dispute to an informal resolution process within the company, and, if necessary, to resolve the dispute through arbitration. The agreement covered "all matters directly or indirectly related to [Quach's] recruitment, employment, or termination of employment." Quach signed and returned his copy of the agreement on February 18, 2015.

---

[1] Our factual recitation is presented in the light most favorable to the trial court's ruling, including assuming the trial court found credible the factual assertions in Quach's opposition to Commerce Club's motion to compel arbitration.

On November 16, 2018, Commerce Club terminated Quach's employment after a customer paid the casino with $100 in counterfeit bills during Quach's shift.

On November 22, 2019, after receiving a right-to-sue letter from the Department of Fair Employment & Housing, Quach filed a lawsuit against Commerce Club. Among other things, the lawsuit alleged causes of action for wrongful termination, age discrimination, retaliation, and harassment.

On January 7, 2020, Commerce Club filed its answer to the complaint. Although it asserted Quach should be compelled to arbitrate "[t]o the extent that [he] has agreed to arbitrate any or all of the purported claims asserted in the [c]omplaint," Commerce Club did not move to compel arbitration at that time. It propounded an initial set of discovery requests, consisting of form interrogatories, special interrogatories, requests for admission, and requests for production of documents. It posted jury fees on March 3, 2020, and sent responses to Quach's discovery requests on March 6, 2020.

On March 4, 2020, the Governor declared a statewide state of emergency due to the global COVID-19 pandemic. On March 23, 2020, the Chief Justice of the California Supreme Court issued the first in a series of emergency orders delaying lower court proceedings for the foreseeable future.[2]

On March 25, 2020, Commerce Club propounded a second set of special interrogatories on Quach. It also engaged in a meet and confer process with Quach to address concerns Quach raised with Commerce Club's discovery responses. Among other things,

_____

[2] We take judicial notice of these orders sua sponte. (Evid. Code, § 452, subd. (c).)

4

Quach informed Commerce Club in May 2020 that Commerce Club had not provided verifications for any of its discovery responses. According to a declaration provided by Quach's counsel, "the meet and confer process was put on hold while [Quach] waited for [Commerce Club] to provide verifications."

On June 23, 2020, Commerce Club took Quach's deposition via Zoom in a full-day session.

On September 16, 2020, the trial court on its own motion continued the trial date, previously set for December 7, 2020, to July 19, 2021, with the final status conference continued from November 19, 2020, to July 1, 2021.

Also on September 16, 2020, Commerce Club served the verifications Quach had requested in May 2020.

On October 9, 2020, Commerce Club participated in another meet and confer process with Quach, ultimately agreeing to provide supplemental responses to Quach's discovery requests.

On October 29, 2020, Commerce Club informed Quach's counsel that it had located Quach's complete arbitration agreement, and it asked for Quach's stipulation to stay his lawsuit and resolve the dispute through arbitration. Quach refused, asserting that Commerce Club had waived its right to arbitrate.

On December 23, 2020, 13 months after Quach filed his lawsuit, Commerce Club filed a motion to compel arbitration. The motion, citing a declaration from Commerce Club's executive director of human resources, contended that Commerce Club initially was unable to locate a complete copy of the arbitration agreement signed by Quach, and only discovered it when reviewing Quach's employment file in responding to Quach's requests for production of documents. Commerce Club argued

5

Quach suffered no prejudice from the delay, because the parties had engaged in only "minimal discovery" due to Commerce Club closing operations during the COVID-19 pandemic, "which has impacted access to information and witnesses."

In opposition, Quach argued that Commerce Club had waived the right to arbitrate. He claimed Commerce Club was aware it possessed a copy of the arbitration agreement from the beginning, because it had provided him a copy of his signed signature page from the agreement before the lawsuit was filed. He asserted that Commerce Club's delay in seeking to arbitrate was prejudicial because he had spent time and money preparing for litigation. Alternatively, he argued the agreement was unconscionable and unenforceable.

On January 22, 2021, the trial court denied Commerce Club's motion, finding that Commerce Club had waived its right to arbitration. The court reasoned that Commerce Club had engaged in a "litany of pretrial exchanges and actions," despite knowing of its right to compel arbitration and its company policy to secure signed arbitration agreements from each employee. The trial court also found that Commerce Club had presented a "large amount of written discovery," "tak[en] [Quach's] deposition," and spent "significant time meeting and conferring over many months," and concluded that this evidence showed "a position inconsistent to arbitrate and resulting prejudice to [Quach]." The trial court did not reach the issue of unconscionability.

Commerce Club timely appealed.

## DISCUSSION

### A. Commerce Club Did Not Waive the Right To Arbitration

We disagree with the trial court's conclusion that Commerce Club, through its conduct, waived the right to demand arbitration.

#### 1. Applicable law

"California law strongly favors arbitration" " ' "as a speedy and relatively inexpensive means of dispute resolution." ' [Citation.]" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).) Code of Civil Procedure section 1281.2, subdivision (a), however, provides grounds for denying a petition to compel arbitration, including when "[t]he right to compel arbitration has been waived by the petitioner."

" . . . 'California courts have found a waiver of the right to demand arbitration in a variety of contexts, ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration [citations] to instances in which the petitioning party has unreasonably delayed in undertaking the procedure. [Citations.] . . . [Citation.]' [Citation.]" (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 374–375 (*Iskanian*).) "In light of the policy in favor of arbitration, 'waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof.' [Citation.]" (*Id.* at p. 375.)

Waiver of the right to arbitrate is assessed through a number of factors, including: " ' " '(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the

7

litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.' " ' [Citation.]" (*Iskanian*, *supra*, 59 Cal.4th at p. 375, quoting *St. Agnes Medical Center, supra*, 31 Cal.4th at p. 1196.)

"No one of these factors predominates and each case must be examined in context." (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 444; see also *St. Agnes Medical Center*, *supra*, 31 Cal.4th at p. 1195 ["no single test delineates the nature of the conduct that will constitute a waiver of arbitration"].) The question of prejudice, however, "is critical in waiver determinations." (*St. Agnes Medical Center*, at p. 1203; accord, *Iskanian*, at pp. 376–377; see *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1205 (*Hoover*) ["The presence or absence of prejudice from the litigation is a determinative issue" in waiver analysis].)

" 'The question of waiver is generally a question of fact, and the trial court's finding of waiver is binding on us if it is supported by substantial evidence. [Citation.] "We infer all necessary findings supported by substantial evidence [citations] and 'construe any reasonable inference in the manner most favorable to the judgment, resolving all ambiguities to support an

affirmance.' " ' " (*Garcia v. Haralambos Beverage Co.* (2021) 59 Cal.App.5th 534, 541–542.) "Where the relevant facts are undisputed and only one inference may reasonably be drawn from the facts, the waiver issue may be reviewed de novo." (*Fleming Distribution Co. v. Younan* (2020) 49 Cal.App.5th 73, 81 (*Fleming*).)

### 2. Analysis

Even deferring to the trial court's factual findings under a substantial evidence standard of review, we conclude Quach's showing of prejudice was inadequate as a matter of law, and he therefore failed to meet his " 'heavy burden' " below. (*Iskanian*, *supra*, 59 Cal.4th at p. 375.)

In his opposition below, Quach contended Commerce Club had "acted inconsistently with an intent to arbitrate" "by propounding and responding to discovery, engaging in the meet and confer process regarding those responses, posting jury fees, and taking [Quach's] deposition." He claimed he had "been prejudiced by expending time and money on the litigation in this case." The trial court appears to have accepted this argument, stating that Commerce Club's participation in discovery "shows both a position inconsistent to arbitrate and resulting prejudice to [Quach]."

Quach's showing was insufficient as a matter of law to establish waiver. In *St. Agnes*, our Supreme Court held that " ' "[w]aiver does not occur by mere participation in litigation" ' " if there has been no judicial litigation of the merits of arbitrable issues . . . . [Citation.]" (*St. Agnes Medical Center*, *supra*, 31 Cal.4th at p. 1203.) In the instant case, there has "been no judicial litigation of the merits of arbitrable issues," and therefore no waiver on that basis. (*Ibid.*)

9

Further, although " ' " 'waiver *could* occur prior to a judgment on the merits if prejudice could be demonstrated,' " ' " (*St. Agnes Medical Center*, *supra*, 31 Cal.4th at p. 1203, italics added), the Supreme Court has made clear that litigation expenses alone cannot support a claim of prejudice: "Because merely participating in litigation, by itself, does not result in a waiver, courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses." (*Ibid.*)

"Rather," continued the court, "courts assess prejudice with the recognition that California's arbitration statutes reflect ' "a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution" ' and are intended ' "to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing." ' [Citation.] Prejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." (*St. Agnes Medical Center*, *supra*, 31 Cal.4th at p. 1204.) "For example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration [citations]; where a party unduly delayed and waited until the eve of trial to seek arbitration [citation]; or where the lengthy nature of the delays associated with the petitioning party's attempts to litigate resulted in lost evidence [citation]." (*Ibid.*)

Quach has not met *St. Agnes*'s test. His showing below indicated nothing more than the parties participated in litigation. That participation, moreover, largely was limited to party-directed discovery, with no trial court involvement, and certainly no determinations by the court on the merits. Quach has not shown any prejudice apart from the expenditure of time and money on litigation. He does not, for example, claim Commerce Club has gained information or conducted discovery it would not have been able to obtain in arbitration or that the delay led to lost evidence. Commerce Club moved to compel arbitration almost seven months before the then-operative trial date, not on the "eve of trial."[3] (See *St. Agnes Medical Center*, *supra*, 31 Cal.4th at p. 1204.)

Quach argues that cases cited in the Supreme Court's later decision in *Iskanian* establish that litigation expenses can support a finding of prejudice if they are the result of a party's "unreasonable" delay in asserting the right to arbitrate. *Iskanian* stated, "Some courts have interpreted *St. Agnes Medical Center* to allow consideration of the expenditure of time and money in determining prejudice when the delay is unreasonable." (*Iskanian*, *supra*, 59 Cal.4th at p. 377.) As an example, the court quoted *Burton v. Cruise* (2010) 190 Cal.App.4th 939 (*Burton*), which held that " 'a petitioning party's conduct in stretching out the litigation process itself may cause prejudice by depriving the other party of the advantages of arbitration as an "expedient, efficient and cost-effective method to resolve disputes."

---

[3] As previously noted, the trial court had previously continued the initial trial date so that when Commerce Club moved to compel arbitration in December 2020, the trial date was set for July 2021.

11

[Citation.] Arbitration loses much, if not all, of its value if undue time and money is lost in the litigation process preceding a last-minute petition to compel.' [Citation.]" (*Iskanian*, at p. 377, quoting *Burton*, at p. 948.)

*Iskanian* then cited to "[o]ther courts [that] have likewise found that unjustified delay, combined with substantial expenditure of time and money, deprived the parties of the benefits of arbitration and was sufficiently prejudicial to support a finding of waiver to arbitrate." (*Iskanian*, *supra*, 59 Cal.4th at p. 377, citing *Hoover*, *supra*, 206 Cal.App.4th at p. 1205; *Roberts v. El Cajon Motors, Inc.* (2011) 200 Cal.App.4th 832, 845–846 (*Roberts*); *Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1451 (*Adolph*); *Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 558 *(Guess?, Inc.)*; *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 996 (*Sobremonte*).)

The court in *Iskanian* found these authorities inapplicable, however, because "[i]n each of them, substantial expense and delay were caused by the *unreasonable* or *unjustified* conduct of the party seeking arbitration." (*Iskanian*, *supra*, 59 Cal.4th at p. 377.) In *Iskanian*, in contrast, the court concluded the delay in seeking arbitration was reasonable and excusable given the fluctuating state of the law at the time as to the arbitrability of the particular claims at issue. (*Id.* at pp. 376–378.)

In light of *Iskanian*, Quach argues that the proper test for waiver is whether Commerce Club's delay in asserting its right to arbitration was "reasonable." (See *Bower v. Inter-Con Security Systems, Inc.* (2014) 232 Cal.App.4th 1035, 1048 (*Bower*) ["The distinction in the case law turns on whether any delay in seeking

arbitration is *reasonable*."].)[4]  Quach contends Commerce Club's delay was not reasonable, because the evidence showed Commerce Club knew of the arbitration agreement even before the lawsuit was filed, yet waited more than a year before moving to compel arbitration.  "By then," he contends, "all benefits of a speedy resolution [Quach] could have obtained through arbitration had been lost."

An examination of the cases cited in *Iskanian*, however, reveals that the showing of prejudice and/or undue delay in those cases was qualitatively different from Quach's showing here.

In *Burton*, the plaintiff moved to compel arbitration so close to the trial date that she had to seek ex parte relief to shorten time to hear the motion.  The appellate court concluded that granting the motion would have actually lengthened the proceedings by requiring the parties to take extra time to select the arbitrators:  " 'Starting anew in an arbitral forum at that late date would delay resolution of the dispute, not advance it.' [Citation.]"  (*Burton, supra*, 190 Cal.App.4th at p. 949.)  The defendant was further prejudiced because, on the assumption he was preparing for a jury trial, he already had selected and prepared experts specifically suited for testifying to a jury rather than a more technically adept arbitration panel.  (*Id*. at pp. 949–950.)

In *Hoover*, the evidence showed that the defendant, the party seeking to compel arbitration, had delayed asserting its

---

[4]  It is not clear to us that *Iskanian*, in citing *Burton* and the other Court of Appeal decisions, was endorsing them as opposed merely to distinguishing them.  We need not decide that question, because as we explain, those cases are distinguishable from and inapplicable to the instant case as well.

13

right to arbitrate while it "availed itself of discovery mechanisms like depositions not available in arbitration" and "solicited putative class members, in an effort to reduce the size of the class." (*Hoover*, *supra*, 206 Cal.App.4th at p. 1205.) The defendant also had engaged in extensive litigation requiring court involvement, including two attempts to remove the case to federal court, a demurrer, discovery disputes, and opposing a temporary restraining order. (*Id.* at pp. 1200, 1205.)

In *Roberts*, the defendant's delay in asserting the right to arbitration led to the plaintiff expending substantial time and money conducting class discovery, much or all of which "would be rendered useless" if the matter proceeded to arbitration given a class action waiver in the arbitration agreement. (*Roberts*, *supra*, 200 Cal.App.4th at p. 845.) The defendant also used the delay between filing its answer and moving to compel arbitration to seek out putative class members and attempt to settle with them, an action the reviewing court held was inconsistent with an intent to arbitrate and prejudicial to the plaintiff. (*Id.* at p. 847.)[5]

In *Adolph*, the court affirmed the trial court's finding that the defendants intended to proceed with the court action up until the point the trial court overruled their second demurrer, at which point they suddenly produced the previously undisclosed arbitration agreement and moved to compel arbitration. (*Adolph*, *supra*, 184 Cal.App.4th at p. 1451.) The Court of Appeal stated it was "loathe to condone conduct by which a defendant repeatedly

---

[5] The dissent states that *Hoover* and *Roberts*, as class action cases, "have little relevance to someone in Quach's position." (Dis. opn. *post*, at p. 6.) We agree. We address them only because Quach relies on *Iskanian*'s purported approval of those cases and others to support his position.

14

uses the court proceedings for its own purposes (challenging the pleadings with demurrers) while steadfastly remaining uncooperative with a plaintiff who wishes to use the court proceedings for *its* purposes (taking depositions) . . . ." (*Id.* at p. 1452.) The court held the evidence supported a finding of bad faith on the part of defendants. (*Ibid.*) As in *Burton*, the court also found that given the late date at which the defendants moved to compel arbitration, switching to the arbitral forum would further delay the proceedings. (*Adolph*, at p. 1452.)

In *Guess?, Inc.*, the court concluded that Guess?, Inc., the party resisting arbitration, had suffered prejudice because of the "substantial expense of pretrial discovery and motions that would have been avoided had Kirkland [the party moving to compel arbitration] timely and successfully asserted a right to arbitrate. Through its use of the discovery process, Guess has disclosed at least some of its trial tactics to Kirkland, certainly more so than would have been required in the arbitral arena. " (*Guess?, Inc.*, *supra*, 79 Cal.App.4th at p. 558.)

In *Sobremonte*, akin to *Roberts* and *Guess?, Inc.*, the parties resisting arbitration spent time and money on discovery and proceedings that would have not occurred in arbitration. (*Sobremonte*, *supra*, 61 Cal.App.4th at p. 995.) The party seeking to compel arbitration, moreover, had taken " ' "advantage of judicial discovery procedures not available in arbitration." ' [Citation.]" (*Ibid.*) That party also engaged in substantial litigation requiring judicial involvement, including filing demurrers, resisting motions to compel discovery, seeking protective orders, and attempting to transfer the matter to municipal court. (*Id.* at pp. 995–996.)

15

Quach has made no showing comparable to those in the cases described above. Perhaps most crucially, he provided no evidence or argument, other than conclusory statements, that he had spent time or money engaging in proceedings or preparation he would have avoided had Commerce Club asserted its right to arbitrate sooner. Indeed, at oral argument Quach's counsel conceded Quach had incurred no such expenses. Nor has Quach made any effort to show that moving to an arbitral forum at this point will delay proceedings, as the late-filed motions to compel arbitration did in *Burton* and *Adolph*.

The record also is bereft of evidence that Commerce Club engaged in bad faith abuse of judicial processes akin to the defendants in *Adolph*, who used judicial mechanisms such as demurrers to their advantage while resisting the plaintiff's use of other judicial mechanisms. Instead, the parties engaged only in party-directed discovery, and had yet to involve the trial court or invoke its powers through demurrers, motion practice, or otherwise.

Quach argues that Commerce Club was recalcitrant in responding to his discovery requests while aggressively pursuing its own discovery, suggesting "it was more interested in delay than expeditious resolution through arbitration." Quach has made no effort to show, however, that this would have been avoided had the parties been in an arbitral forum. That is, Quach makes no effort to show that the arbitrator or the applicable arbitration rules would have altered the discovery the parties sought or prevented Commerce Club's purported delay tactics.

Quach cites additional cases postdating *Iskanian*, but they are similarly unavailing. In *Bower*, the court affirmed a finding

16

of waiver when the defendant "substantially impaired [the plaintiff's] ability to obtain the cost savings and other benefits associated with arbitration" by "requir[ing] [the plaintiff] to respond to discovery that would have been unavailable in arbitration. It was not just that [the plaintiff] incurred legal fees and costs; those expenses were associated with work that would be useless in arbitration." (*Bower*, *supra*, 232 Cal.App.4th at p. 1046.)

In *Fleming*, the employer did not move to compel arbitration until after its former employee had prevailed on a claim of unpaid wages and commissions before the Labor Commissioner. (*Fleming*, *supra*, 49 Cal.App.5th at p. 78.) The Court of Appeal affirmed the trial court's finding of waiver, stating the employee "suffered the prejudice of waiting several years to collect wages that at least one tribunal has determined he was owed, when the matter could have been arbitrated . . . if [the employer] had sought to compel arbitration" earlier. (*Id.* at p. 83.)

In contrast, again, Quach has made no showing that he has spent any time or money on litigation that he would not have spent had Commerce Club moved to compel arbitration earlier. Nor does he offer any evidence or other basis to conclude that his claims would have been resolved more quickly in arbitration. Commerce Club's delay is not comparable to the employer in *Fleming*, which did not move to compel arbitration until the Labor Commissioner had issued a ruling on the merits against it.

Also distinguishable is the recent decision by our colleagues in Division Eight, *Kokubu v. Sudo* (2022) 76 Cal.App.5th 1074, which upheld the trial court's finding that the appellants had waived their right to arbitrate. (*Id.* at p. 1079.) The appellants

17

in that case had, *inter alia,* withdrawn an earlier arbitration demand, acknowledged that they "secretly intended to avail themselves of rights unique to the court before seeking to compel arbitration," engaged in judicial discovery not available in arbitration, and "substantially invoked the litigation machinery" by filing a cross-complaint, 10 motions, propounding discovery, and obtaining relief with respect to a lis pendens. (*Id.* at pp. 1086–1087.) The record here shows no conduct akin to that in *Kokubu*.

Quach suggests that Commerce Club's purported reasons for its delay in moving to compel arbitration—closures due to COVID-19 and the inability to find a complete signed copy of the arbitration agreement—were pretextual, and nothing prevented Commerce Club from asserting its right to arbitrate at the outset of the lawsuit. The trial court similarly found that Commerce Club "knew of its right to compel arbitration," and failure to "find the proper documents is not an excuse for not moving to compel arbitration at a much earl[ier] time."

As the case authority we have discussed above establishes, a party's delay in asserting the right to arbitrate is not "unreasonable" merely because the party could have asserted it at an earlier time. Rather, what makes the delay "unreasonable" is that it negatively impacts the party resisting arbitration, such as by requiring that party to expend resources it otherwise would have saved by arbitrating the dispute, or by allowing the party asserting arbitration to take advantage of judicial processes not available in arbitration. Quach has failed to show negative impact from Commerce Club's delay.

The dissent contends we should infer from Commerce Club's "lack of candor" regarding the reasons for its delay that

18

Commerce Club deliberately delayed the proceedings and subjected Quach to judicial discovery "to intimidate a vulnerable at-will employee who lacks the economic resources to cope with such delay." (Dis. opn. *post*, at p. 8.) Respectfully, this is pure speculation, and goes far beyond the trial court's findings, which were that Commerce Club's explanations did not excuse the delay. There is no indication the trial court inferred nefarious intent, nor shall we on this record.

The dissent at various points intimates we are imposing an unreasonable or unnecessary evidentiary burden on parties seeking to establish waiver of arbitration. We merely hold that when a party resisting arbitration makes *no* showing other than a lengthy delay during which the parties engaged in party-directed discovery—with no indication that discovery would have been unavailable or unnecessary in arbitration or that the party incurred costs that it would not otherwise have incurred had arbitration occurred earlier—that showing runs afoul of *St. Agnes Medical Center*'s admonitions that " ' "[w]aiver does not occur by mere participation in litigation" ' " and "courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses." (*St. Agnes Medical Center*, *supra*, 31 Cal.4th at p. 1203.) Our holding here is based on Quach's failure to show anything beyond what *St. Agnes Medical Center* already has declared insufficient to prove waiver.

Although the dissent suggests we are "overextend[ing] ourselves to preserve a compulsory arbitration agreement" (dis. opn. *post*, at p. 2), we are merely applying well-established principles set forth by our high court. This we must do regardless of the dissent's views on the fairness of compelling plaintiffs to

19

arbitrate pursuant to an agreement signed as a condition of employment.

## B.  Quach Fails To Show The Arbitration Agreement Is Unconscionable

Quach argues that even if Commerce Club did not waive the right to arbitrate, the arbitration agreement is unconscionable and unenforceable.  We disagree.

### 1.  Applicable law

" ' "[G]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening" the FAA' or California law." (*OTO*, *supra*, 8 Cal.5th at p. 125.)

"A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party.  [Citation.]  Under this standard, the unconscionability doctrine ' "has both a procedural and a substantive element." ' [Citation.]  'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.  [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' [Citation.]" (*OTO*, *supra*, 8 Cal.5th at p. 125.)

"Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.' [Citation.]  Instead, they are evaluated on ' "a sliding scale." ' [Citation.]" (*OTO*, *supra*,

20

8 Cal.5th at p. 125.) "The burden of proving unconscionability rests upon the party asserting it." (*Id.* at p. 126.)

If an arbitration agreement contains unconscionable provisions, the court " 'must determine whether these terms should be severed, or whether instead the arbitration agreement as a whole should be invalidated.' [Citation.]" (*Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 452–453 (*Lange*).) " '[T]he strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement,' " unless the " ' "agreement is 'permeated' by unconscionability." ' [Citations.]" (*Id.* at p. 453.)

In the absence of conflicting evidence, whether an arbitration provision is unconscionable presents an issue of law we review de novo. (*Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 66.) Thus, although the trial court in the instant case did not reach the issue of unconscionability, we may resolve the issue on undisputed facts as a matter of law in the first instance.

### 2. Analysis

We will presume Quach has made a showing of at least some procedural unconscionability, given the evidence that Commerce Club required him to sign the arbitration agreement as a condition of continued employment. (See *Najarro v. Superior Court* (2021) 70 Cal.App.5th 871, 883–884.) We nonetheless conclude he has made an insufficient showing of substantive unconscionability to invalidate the agreement.

21

Quach first attacks the following paragraphs in the arbitration agreement:[6] "In the event of any dispute, prior to commencing any legal action, [the employee] or the Company, whichever is the complaining party, shall give prompt written notice to the other . . . of the nature of the dispute, claim or controversy. Upon the receipt of such written notice, the Parties agree to meet within 30 days in person to discuss in good faith the dispute, claim or controversy for the purpose of attempting to resolve it informally. [¶] If the Parties cannot resolve their differences in that informal dispute resolution process, then all claims relating to [the employee's] recruitment, employment with, or termination of employment from the Company shall be deemed waived unless submitted to final and binding arbitration by JAMS . . . ."

Quach argues the requirement of informal, nonbinding mediation "ha[s] no meaning to [Quach], unless he retains counsel." The very purpose of mediation is to work out disputes without having to proceed to litigation or arbitration, which is of benefit to all parties. We see nothing unconscionable in requiring the parties to do so, and Quach cites no authority to the contrary.

Quach next contends the above quoted language requires him to "resolve the dispute within 30 days." (Italics & boldface omitted.) This misreads the language, which requires only that

---

[6] Quach characterizes the arguments concerning these paragraphs as pertaining to procedural unconscionability, but because he is challenging the terms of the agreement itself, his argument is better characterized as one of substantive unconscionability. (*OTO*, *supra*, 8 Cal.5th at p. 125 [" 'Substantive unconscionability pertains to the fairness of an agreement's actual terms . . . .' [Citation.]"].)

the parties meet to discuss their dispute within 30 days after one has served notice of a dispute on the other.

Quach then challenges the language stating that an employee waives claims not submitted to JAMS for arbitration. Quach reads this language to provide that "if an employee waits 6 months after a failed mediation, he is out of luck." We see nothing in the language setting a deadline for when an employee must arbitrate claims following an unsuccessful mediation. Rather, the language indicates that to the extent the employee wishes to pursue claims following mediation, the employee must do so through arbitration.

Turning to other provisions of the arbitration agreement, Quach contends the agreement unfairly exempts from arbitration claims likely to be brought by Commerce Club, such as claims for violation of confidentiality or theft of trade secrets, while requiring the employee to arbitrate most claims. This argument fails because Quach does not identify any language in the arbitration agreement establishing this purported exemption for employer claims, nor can we find any such language. Rather, the agreement applies to "all matters directly or indirectly related to [the employee's] recruitment, employment, or termination of employment." This broad language would encompass claims by Commerce Club against Quach for confidentiality or trade secret violations, which would be "related to" his "employment." Indeed, the agreement's only express exemptions are for specific claims by the *employee*, such as workers' compensation benefits, unemployment insurance benefits, and claims under the National Labor Relations Act.

Quach next contends the agreement is unconscionable for incorporating JAMS rules that "subjected [Quach] to a risk of

bearing costs forbidden by" case law.  Arbitration agreements between employees and employers " 'cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court. . . .'  [Citation.]" (*O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 279, italics omitted.)  Quach does not cite any JAMS rules contravening this principle.  Regardless, the agreement expressly states that any arbitration fees paid by the employee "shall be limited up to the amount the Employee would have had to pay had the matter been filed in court.  [Commerce Club] shall pay remaining arbitration administrative costs and arbitrator's fees."  Quach's argument ignores this language.

Quach argues the agreement fails to "discuss recovery of fees and costs by [Quach]," suggesting that the agreement might impair his statutory right to fees and costs under the Fair Employment and Housing Act (FEHA).  We read the agreement's silence as to attorney fees and costs to indicate the parties intend the arbitrator to apply FEHA or other substantive law without alteration.  (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 112 [an "agreement to arbitrate a statutory claim is implicitly an agreement to abide by the substantive remedial provisions of the statute"].)

Quach argues the agreement is unconscionable because it requires him to waive his right to bring claims in a "representative proceeding."  Quach argues this language waives his right to bring claims under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.; PAGA), a waiver the Supreme Court has held is unenforceable as contrary to public policy.  (*Iskanian, supra*, 59 Cal.4th at p. 384.)  Assuming

24

arguendo a PAGA waiver is substantively unconscionable, a question on which we express no opinion, the solution would be to sever that provision from the agreement. (See *Lange*, *supra*, 46 Cal.App.5th at p. 453.) The PAGA waiver would not justify invalidating the entire agreement. Also, Quach has not asserted a PAGA claim, and therefore we need not decide whether to sever that provision.

Although not raised on appeal, in his opposition to the motion to compel arbitration below, Quach challenged as unconscionable the following provision: "In the event that either party files, and is allowed by the courts to prosecute, a court action on any claim covered by this agreement, the parties agree that they each agree not to request, and hereby waives his/her/its right to a trial by jury." We have held that a similar provision in an arbitration agreement waiving a right to a jury trial " 'in the event that any controversy or claim is determined in a court of law' " is substantively unconscionable. (*Lange*, *supra*, 46 Cal.App.5th at pp. 451–452.) Assuming arguendo the waiver here also is unconscionable, again, it would be severable.

The only provisions of the agreement identified by Quach that arguably support a finding of substantive unconscionability are severable, and Quach's other claims of substantive unconscionability are without merit. There is thus no basis to invalidate the agreement as unconscionable.

25

## DISPOSITION

The order is reversed.  The trial court is directed to grant California Commerce Club, Inc.'s motion to compel arbitration and stay further proceedings.  California Commerce Club, Inc. is awarded its costs on appeal.

<u>CERTIFIED FOR PARTIAL PUBLICATION.</u>


BENDIX, J.


I concur:


ROTHSCHILD, P. J.

26

CRANDALL, J.,* Concurring and Dissenting.

The unfairness of compelling non-unionized employees to forfeit their access to the civil justice system in favor of private arbitration is well recognized. (Greene & O'Brien, *Epic Backslide: The Supreme Court Endorses Mandatory Individual Arbitration Agreements–#TimesUp on Workers' Rights* (2019) 15 Stan. J. C.R. & C.L. 43, 45, 47-48 (*Epic Backslide*).) In 2018, there were as many as 60 million American workers subjected to such "agreements," and that number is likely much higher today. (*Id.* at p. 45.) Mandatory arbitration for such employees is pernicious because economic and noneconomic pressures can leave them without any viable forum in which to bring their claims. (*Id.* at pp. 50, 70-71.)

Although the legality of these compulsory arbitration agreements must be acknowledged for the present moment as water under the judicial bridge,[1] we should not overextend

_____

[1] Were we writing on a clean slate, I would encourage us to find the entire agreement unconscionable and, hence, unenforceable. Not only had Peter Quach and his fellow employees been forced to sign the agreement upon pain of immediate termination, but, among other things, it made all of them give up any resort whatsoever to the civil justice system, including the right to a jury trial in the event the case ever did make it to court. But the California Supreme Court has made clear that " 'contracts of adhesion' " are " 'indispensable facts of modern life that are generally enforced' " even though they " ' "bear within them the clear danger of oppression and overreaching." ' " (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244.) Further, there is a strong legislative and judicial preference to sever any offending term (here: the jury waiver) and

ourselves to preserve a compulsory arbitration agreement that the employer has clearly waived, as appellant California Commerce Club, Inc. (Commerce Club) did in this case with respect to their at-will employee of 29 years, respondent Peter Quach.

There is no litmus test for determining whether a party has waived its right to pursue arbitration under Code of Civil Procedure section 1281.2, subdivision (a). (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 374-375 (*Iskanian*); see *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 ["no single test delineates the nature of the conduct that will constitute a waiver of arbitration"] (*St. Agnes*).) Rather, waiver depends upon a variety of factors, including: " ' " '(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; . . . (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.' " ' " (*Iskanian, supra*, at p. 375.)

Despite asserting arbitration as an affirmative defense in its answer and notwithstanding the litigation difficulties caused by the onset of the COVID-19 pandemic, Commerce Club actively

---

enforce the balance of such agreements. (*Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 455.) Accordingly, I reluctantly concur in the second part of the majority decision.

pursued a course of action evidencing every intention of fully utilizing the civil justice system. It attended case management conferences, propounded multiple sets of written interrogatories and requests for admission, engaged in multiple meet-and-confer meetings with opposing counsel, tasked Quach and his counsel with analyzing over 900 pages of the company's responses to his written discovery, posted jury fees, and required Quach to sit for a full day of an expected multi-day deposition on the Zoom platform.

Under *Iskanian*, Commerce Club's actions were " ' " 'inconsistent with the right to arbitrate' " ' " as it " ' " ' "substantially invoked" ' " ' " the litigation machinery before its motion to compel arbitration was filed. (*Iskanian*, *supra*, 59 Cal.4th at p. 375.) And, because it first moved to compel arbitration on the very day of the originally scheduled trial date (having deliberately waited until 13 months after suit had been filed) we can safely say that Commerce Club " ' " 'requested arbitration enforcement close to the trial date.' " ' " (*Ibid.*)

A critical element in determining whether arbitration has been waived, under both *Iskanian* and *St. Agnes*, is " ' "whether the delay 'affect[s], misle[ads], or prejudice[s]' the opposing party." ' " (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196.) Such prejudice is ordinarily found "where the petitioning party's conduct has substantially undermined [the] important public policy [in favor of arbitration] or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." (*Id.* at p. 1204; *Iskanian*, *supra*, 59 Cal.4th at p. 377 [" 'a petitioning party's conduct in stretching out the litigation process *itself may cause prejudice* by depriving the other party of

3

the advantages of arbitration as an "expedient, efficient and cost-effective method to resolve disputes" ' " (italics added)].)

Although Commerce Club blamed its 13-month delay in seeking arbitration on (1) the COVID-19 pandemic and (2) its inability to find a fully executed arbitration agreement, the trial court record raised serious questions about the veracity of these explanations. Most notably, Quach produced evidence showing that, before Quach ever filed his lawsuit, Commerce Club's counsel had turned over his personnel file, including the fully-executed second page of Quach's two-page arbitration agreement, signed in 2015 by Quach and Commerce Club's HR director, Jose Garcia.

Recognizing these (and other) serious inconsistencies in Commerce Club's explanations, the trial court concluded: "The litany of pretrial exchanges and actions by the defendant demonstrate that [Commerce Club] knew of its right to compel arbitration as well as company policy and the employee practice to sign an arbitration agreement. The combined failure of counsel . . . to not find the proper documents is not an excuse for not moving to compel arbitration at a much [earlier] time." In other words, the trial court essentially concluded that Commerce Club's explanations were a pretext that had been fabricated to justify its tardy motion to compel arbitration.

Given our limited standard of review,[2] the trial court's reasoning *by itself* should be sufficient for us to uphold its finding

---

[2] Because the trial court resolved disputed facts regarding Commerce Club's delayed arbitration request, we are required to infer all necessary findings supported by substantial evidence and construe all reasonable inferences in the manner most favorable to the judgment. (*Garcia v. Haralambos Beverage Co.*

4

of waiver.  (*Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1452 [courts are "loathe to condone conduct by which a [litigant] repeatedly uses the court proceedings for its own purposes . . . all the while not breathing a word about . . . [its] desire to pursue arbitration"]; *Iskanian*, *supra*, 59 Cal.4th at p. 377 [" 'a petitioning party's conduct *in stretching out the litigation process itself may cause prejudice* by depriving the other party of the advantages of arbitration as an "expedient, efficient and cost-effective method to resolve disputes" ' " (italics added)], quoting *Burton v. Cruise* (2010) 190 Cal.App.4th 939, 948.)

Case law cautions against resolving arbitration waivers in a rote or formulaic manner.  (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 444 ["each case must be examined in context"].)  Although Quach's showing of prejudice is not identical to the prejudice discussed in other arbitration cases,[3] it is surely meaningful in the context of an at-will

_____

(2021) 59 Cal.App.5th 534, 541-542.)  "The appellate court may not reverse the trial court's finding of waiver unless the record as a matter of law compels finding nonwaiver." (*Kokubu v. Sudo* (2022) 76 Cal.App.5th 1074, 1083.)  This deferential standard of review is critical in waiver cases. (*Id.* at p. 1085 ["Trial courts are uniquely positioned to evaluate the conduct of litigants before them within the broader context of a case.  Given that the *St. Agnes* factors are largely concerned with such conduct, the deference we give to the trial courts' factual determinations is especially warranted in the context of alleged arbitration waiver"].)

[3] While Quach's out-of-pocket expenditures in this litigation have not been significant, his trial counsel has already spent considerable *time* litigating this case.  The dollars and cents incurred during litigation are only *one* of many considerations in evaluating whether prejudice exists; a party's

employee who lacks even the benefit of a collective bargaining agreement.[4]

As of this writing, Quach and Commerce Club are well over two years into litigation, far beyond the time when private arbitration would have fulfilled its promise " ' "as a speedy and relatively inexpensive means of dispute resolution." ' " (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125.) Indeed, had Commerce Club's arbitration motion been filed at the outset, i.e., during the three and a half months before the onset of the pandemic, the *entire arbitration* could well have been completed by now. (See *Kokubu v. Sudo, supra*, 76 Cal.App.5th at p. 1091 [finding that a party caused prejudice by, among other things, "holding their demand [to compel arbitration], [and thus] delay[ing] resolution of the case relative to when it might have concluded had they promptly exercised their right to compel arbitration"].)

Quach should not need to "prove" the obvious point that Commerce Club's serious delay in compelling arbitration has prejudiced him. It is widely known that the alternate dispute resolution business flourished on remote platforms while this

---

and counsel's expenditure of time is another. (See, e.g., *Kokubu v. Sudo, supra*, 76 Cal.App.5th at pp. 1087-1088 [evaluating the reasonableness of a party's delayed arbitration demand by examining whether the delay was "accompanied by costs incurred, changes in strategic advantage, use of disputed property, consumption of the time of parties and counsel, and other impacts"].)

[4] His case is also dissimilar to *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1205 and *Roberts v. El Cajon Motors, Inc.* (2011) 200 Cal.App.4th 832, 845 and 847. These class action cases have little relevance to someone in Quach's position.

6

case was being litigated, even as the COVID-19 pandemic significantly disrupted traditional litigation. (Maclachlan, *ADR sees another boom year, becomes 'way of life,'* L.A. Daily J. (Dec. 28, 2021); Maclachlan, *Mandatory arbitrations are up, plaintiffs' attorneys say*, L.A. Daily J. (Dec. 27, 2021).)[5]

We also ask too much of Quach by requiring him specifically to identify the *motivation* for Commerce Club's lack of candor.[6] (*Berman v. Health Net* (2000) 80 Cal.App.4th 1359, 1372 ["subjective bad faith is not a required element in a finding of waiver of the right to compel arbitration," but merely "an *alternative* ground for finding waiver," such that "the crucial inquiry is not [necessarily] the subjective motivation of the party seeking arbitration" (capitalization and italics omitted from first quotation)]; see *Adolph v. Coastal Auto Sales, Inc., supra,* 184 Cal.App.4th at p. 1452 ["Although the trial court made no express

---

[5] Judicial notice of these articles is proper pursuant to section 452 of the Evidence Code. (*Id.*, subd. (h) ["Judicial notice may be taken of the following matters . . . [f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"].)

[6] Nor should we fault Quach for declining to speculate about what sorts of discovery the arbitrator might or might not allow, whether he might be able to use the "judicial" discovery in arbitration, or whether the modest money he has already spent during litigation will save money in arbitration. (Maj. opn., pp. 17 & 18). All we really can say about the arbitration is that it will take place in accordance with the JAMS rules, subject to the agreement's requirement that the arbitration process must include "a fair and simple method for the employee to get information necessary for his/her claim."

7

finding of [the movant's] bad faith, the tone of its ruling is suggestive of such a finding and, had it been made, sufficient evidence would have supported the finding"].)

Even when an employer's bad faith in delaying arbitration is relevant to a finding of waiver, case law does not hold that an employee must climb such a steep evidentiary hill. Rather, courts typically *infer* a party's motivation from its conduct during litigation. (See, e.g., *Diaz v. Professional Community Management, Inc.* (2017) 16 Cal.App.5th 1190, 1207 [finding that a party had waived its right to arbitrate where its conduct showed that "it was the possibility of derailing the trial, rather than a sudden desire to arbitrate, that was the true motivation underlying [its] last-minute motion to compel arbitration"]; *Burton v. Cruise, supra*, 190 Cal.App.4th at p. 949 [finding a waiver where a party's conduct suggested that it attempted to use the court " ' " 'as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration' " ' "].)

We can readily surmise from Commerce Club's lack of candor (as the trial court implicitly did) why Commerce Club may have wanted to put Quach through the time and effort of litigation by serving discovery, taking his full day deposition, trying to obtain his theory of the case, and then pulling the litigation plug 13 months after first raising the specter of arbitration in its initial response. What better way to intimidate a vulnerable at-will employee who lacks the economic resources to cope with such delay? **(**Greene & O'Brien, *Epic Backslide*, *supra*, 15 Stan. J. C.R. & C.L. at p. 45.)

But regardless of its subjective motivation, Commerce Club's tactics were prejudicial because they deliberately and

forever undermined the very nature of a quick resolution that is *the* central tenet of arbitration.  (*OTO L.L.C. v. Kho*, *supra*, 8 Cal.5th at p. 125.)  Quach's appellate brief hits the nail on the head:  "[By now], all benefits of a speedy resolution [Quach] could have obtained through arbitration [have] been lost."  Although Commerce Club's misconduct surely prejudiced Quach by "stretching out the litigation process," we are nevertheless moving Quach back to the arbitration starting gate—a palpably unfair result.

Because of the disputed evidence, the deferential standard of review traditionally used in arbitration waiver cases, and the very real prejudice Quach suffered as a result of Commerce Club's tactics, I respectfully dissent.


CRANDALL, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.